F. A. SHIFFLET ET AL. V. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS.

Delivered January 29, 1898.

**1. Practice in Trial Court—Functions of Court and Jury—Peremptory Instruction.**

Where the course of the legal evidence is such as tends to support the averments of plaintiff's petition, it is the duty of the court to submit the issues of fact to the jury, even though he should feel constrained to set aside any verdict for plaintiff, should such be returned and motion for new trial thereupon made.

**2. Negligence Provable by Circumstantial Evidence.**

While the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that, without negligence, it would not have occurred. Following Washington v. Railway, 90 Texas, 314.

**3. Same—Circumstances May Impeach Direct Evidence.**

Where an engineer and fireman directly deny any negligence in keeping a lookout, but the circumstances attending the accident indicate such negligence, it is for the jury to determine the credibility of the witnesses and the weight of the evidence.

APPEAL from Henderson. Tried below before Hon. W. H. GILL.

*Richardson, Watkins & Miller,* for appellants.

*Sam H. West* and *Clark & Bolinger,* for appellee.

TARLTON, CHIEF JUSTICE.—F. A. Shifflet and his wife brought this suit against the appellee to recover damages in the sum of $10,000, on account of the death of their son, Thomas J. Shifflet. They allege, substantially, that on March 22, 1896, their son, a small child about 10 years of age and wholly without discretion, went upon the defendant's railway track at a point about one and one-half miles west of the town of Brownsboro, in Henderson County, at a place habitually used by pedestrians, and that in plain view of the defendant's approaching train he was run over by the train and instantly crushed and killed; that by the use of reasonable care and diligence the servants operating the train could have seen the child in time to have prevented the accident, but that they negligently failed to discover him.

The defendant's answer consists of a general denial and a special defense, to the effect that the deceased was a trespasser upon its track, and that he was guilty of contributory negligence.

The action of the court in peremptorily instructing the jury to return a verdict for the defendant upon the evidence introduced by the parties respectively, forms the sole matter for our consideration.

Under the rule of decision adopted in this court, if the course of legal evidence was such as tended to support the averments of the plaintiffs' petition, it became the duty of the judge trying the case to submit the issues of fact to the jury, even though, had they returned a verdict against

the defendant he should have felt constrained to set aside that verdict on a motion for a new trial. Fitzgerald v. Hart, 17 S. W. Rep., 369; Bowman v. Brewing Co., 43 S. W. Rep., 808, in which we cite McCray v. Railway, 34 S. W. Rep., 95.

It becomes, therefore, necessary for us to advert to the evidence relied upon by the appellants and to the inferences deducible therefrom.

Thomas J. Shifflet, the son of the plaintiffs, was a small and immature child 11 years old. He was raised on a farm, and was unfamiliar with trains. On the morning of March 22, 1896, he left his father's home, two miles northeast from Brownsboro, in Henderson County, and walked down to the station at Brownsboro. Thence, in company with two other boys, one about 9 and the other about 14 years of age, he went westward on the track of the defendant's railway about twelve or fifteen miles, passing through and beyond the town of Murchison. At about sundown he turned back towards home, and the three boys were last seen going along the track towards Brownsboro about dark. The night was cloudy, but the moon was shining a little.

Appellee's regular passenger train going east passed through Brownsboro about 11:45 at night. When the train reached Tyler, the end of the division, on schedule time, after midnight, the engineer found upon his engine pieces of human flesh, blood, and clothing. On the following morning, at about 10 o'clock, a passenger train of the appellee also going east discovered and picked up the mutilated remains of the three children, strewn along the side of the track at a point one and one-half miles west of Brownsboro. This point was about nine miles east of where the children were last seen at about dark on March 22d.

The appellant F. A. Shifflet testified as follows: "I saw where the boys were struck on the railroad, and saw blood, clothing, and small pieces of flesh and hair of each of the boys inside the rails all together; hair and clothing of each of the boys were found on the rails and ties where they were first struck, and they were dragged about 150 or 160 yards. The blood and corruption was spattered on the west side and top of the ties, and not on the east, showing that they were dragged east. There was a great deal of blood along on the track where they were dragged. The place where the boys were first struck was east of a small bridge or culvert, and on a dump about eight feet high. It was opposite the whistle post for the public road crossing. Standing where they were struck, the track was an air line for about 200 yards, and then began a slight curve, and you could see down the track 300 to 350 yards back west, and you could see the spot where they were struck 350 yards coming from the west, from the center of the track. Looking east from said spot the road ran straight on over the hill. There was a small cut west, and the road was slightly down grade until it came near the culvert. Just before it reached the culvert, about three rails, it began to rise, and then went up grade for the length of seven rails, or 210 feet. Before reaching where the boys were, there was a plain open view in both directions."

The evidence further tended to show that there were no bushes, grass, or weeds to obscure the sight at the place in question, and that the children were struck on a dump of ordinary light colored sandy soil; that the sand between the rails was above the cross ties, and about as high as the top of the rails, and that any object between the rails would be easily seen. A witness also testified that it was a general occurrence for the people to walk up and down the track at this place; that it is the most convenient way to go back and forth in that settlement; that such travel has been going on ever since there was a railroad track there; that it was much used by people going to the postoffice at Brownsboro; that the track had a footpath worn down in the center by pedestrians; that a person lying down or standing on the track could under ordinary conditions, and with an ordinary headlight, such as was used by the appellee's train, be seen four telegraph poles, or 720 feet, ahead; that a train running on an up grade such as that at the place where the children appeared to have been first struck could be stopped in 100 feet, the schedule time of the train in this instance being from 22 to 24 miles per hour.

Neither the engineer nor fireman in charge of the train which reached Tyler as above stated, and on the engine of which were found the evidences of the unfortunate occurrence, had any idea where the accident took place, and they both testified substantially that, in discharge of their recognized duty, they kept a proper and constant lookout, only occasionally, and for a moment, removing their eyes from the front, as necessity required them to do in looking after the engine.

Under the foregoing state of the testimony, the learned counsel for appellee concede that, inasmuch as deceased was a child of tender age, and according to the plaintiff's testimony was without discretion, the court upon the issue of contributory negligence should not have directed a verdict; but they insist, that without reference to the issue of contributory negligence, the court's action was correct, because "there is no proof, either direct or circumstantial, as to any negligence on the part of the appellee, its agents or servants, causing or contributing to the death of the deceased." We proceed, therefore, to consider the question thus presented.

In view of the record, it is of course true that there was no direct evidence inculpating the appellee with negligence, but it seems to us that the following language of Judge Caldwell, 49 Federal Reporter, 350, is pertinent in this connection: "One who kills another in secret, when no eye sees the deadly potion administered or the fatal blow struck, may be convicted of murder and hanged on circumstantial evidence, and no reason is perceived why the same character of evidence may not be sufficient to prove that a railroad company killed a cow or mule, and that the killing was the result of the company's negligence. Some of the cattle sued for were found very soon after they were killed on or near the railroad track, and the injuries and marks of violence appearing upon their bodies were such as would be inflicted by coming in contact

with a moving engine or train of cars. The jury may well find from these circumstances that the cattle were killed by the defendant's train. Whether the killing occurred through the negligence of the railroad company is not so easily proved; but that fact, like any other, may be proved by circumstances. It is competent for the plaintiff, in such cases, to show that the track where the cattle were killed is straight, and free from any obstruction which would obscure the view of the engineer of a train going in either direction, and that by the exercise of ordinary care and diligence the engineer could have seen the cattle on the track, not only in daylight, but by the aid of the headlight of the locomotive in the nighttime also, in time to have avoided the killing."

So, our Supreme Court, in Washington v. Railway, 90 Texas, 320, holds that, "while the naked fact that an accident has happened may be no evidence of negligence, yet the character of the accident and the circumstances in proof attending it may be such as to lead reasonably to the belief that, without negligence, it would not have occurred."

Hence it is clear that negligence in this instance could be established by circumstantial evidence, but in the application of this principle, it must be remember that the existence of each circumstance relied upon in the chain of circumstances leading to the conclusion of negligence must be established by direct evidence. Otherwise the existence of an inculpating circumstance would rest upon a presumption drawn from the existence of another circumstance, and so the rule would be violated which forbids the deducing of one presumption from another. Railway v. Porter, 73 Texas, 307.

Keeping these principles in view, in connection with the facts which it was necessary that the plaintiffs should establish in order to make out their case, we consider the following questions: 1. Was there any evidence tending to show that the deceased met his death by a collision with a train of the appellee? 2. Whether that collision, if it occurred, was due to the negligence of the appellee.

We think the facts established by direct testimony—that the mutilated bodies of the three children were found upon the appellee's track at the place indicated; that they appeared to have been dragged in the manner and for the distance already stated; that their blood and clothing was found upon the appellee's track; and that when the train in question reached Tyler, an hour or so after it passed the scene of the catastrophe, the pieces of human flesh, blood, and clothing as above described were found upon the engine—tended to show that the death of the children was due to a collision with the appellee's locomotive.

A proper answer to the second question depends upon whether there was direct evidence showing circumstances which indicated an absence of due care on the part of the company's servants in the operation of the train; and the existence of such due care, in turn, depends upon whether the company owed any duty to the children, or persons similarly situated, of looking out for them.

As we have seen, there was direct evidence tending to show that the track at the scene of the accident had been for years habitually used by the people of the neighborhood in going to and from Brownsboro, to such an extent that there was a footpath in its center. It seems to be settled in this State that a condition of this character imposes upon the employes of the railway the duty of keeping a proper lookout for persons on the track, and of using reasonable care and caution to discover such persons, and that a failure to use such caution is negligence on the part of the company. Railway v. Simkins, 64 Texas, 615; Railway v. Hewitt, 67 Texas, 474; Railway v. Watkins, 88 Texas, 20.

Appellee's counsel readily concede that in this instance it was the duty of the employes to use reasonable care and caution to discover persons on its track, and that a failure to use such care would be negligence; but it is insisted by them that, as the operatives of the locomotive testified that they kept an outlook, and used every reasonable degree of care and caution to discover persons upon the track, there was no evidence authorizing a different inference.

It is true that these operatives thus testified, but their credibility was for the jury, in view of the existence of circumstances established by direct evidence tending to a contrary conclusion. These circumstances, as we have seen, consisted in the facts, which the plaintiffs' evidence tended to establish, that the children were killed on a dump about eight feet high; that the track at the place in question extended in a direct line for about 250 yards; that a person could be seen at night 260 yards; that a train could be stopped on an upgrade in 100 feet; that there was an upgrade where the children were struck for seven rails, or 210 feet; that the children must have been near each other at the time they were first struck, and that their bodies were pushed eastward for many yards.

Our conclusion is that the court erroneously instructed a verdict for the defendant. The case of Washington v. Railway, 90 Texas, 314, is persuasive of the correctness of this disposition. We have discussed the questions presented in the light mainly of the evidence introduced by the appellants. Hence we will be understood as intimating no opinion whatever upon the weight of the evidence in this case, or that, had it been submitted to the jury, their verdict should or should not have been otherwise.

*Reversed and remanded.*