S. H. PARKS v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

Decided June 7, 1902.

**1.—Master and Servant—Assumed Risk—Evidence.**

Where in an action by a servant to recover for personal injury alleged as resulting from the master's negligence, the evidence is left in such condition as to suggest that the injury is reasonably referable to a cause within the domain of the servant's assumed risks, a verdict for the defendant will be upheld, since the burden of proof is on the plaintiff. See evidence leaving it uncertain as to why cars became uncoupled, and failing to show that the uncoupling resulted from the roadbed and track being out of repair, rough, and unsafe.

**2.—Same—Negligence—Proof by Inference.**

Where there was no evidence showing the condition of the railroad track at the place of an accident resulting in injury to a train employe, and it was shown that the air brakes were found uncoupled, and that this might be caused by a defective or rough track, or might occur from other causes, and was not unusual, the conclusion that the cars became separated, and the further conclusion from this inference that the track was rough, and hence that the railway company was negligent in this respect, were unwarranted as being inference upon inference. McCray v. Railway, 89 Texas, 168, distinguished.

**3.—Same—Presumption.**

Where circumstantial evidence is relied on to prove a fact, the circumstances must be proved and not themselves presumed, since no presumption can be drawn from a presumption, and if there be no fixed or ascertained facts from which the inference of another fact may be drawn, the law permits none to be drawn from it.

**4.—Same—Contributory Negligence—Issue for Jury.**

Where plaintiff, a brakeman, was in the cupola of the caboose, contrary to a known rule of the company which required him to be on the top of the caboose, and there was evidence that had he been on top he might not have been injured, since the jar which threw him was not greater than that occuring in ordinary couplings, and the testimony was conflicting as to whether the conductor ordered him to remain in the caboose, the court did not err in submitting the issue of contributory negligence to the jury. Following Choate v. Railway, 91 Texas, 410.

Error from Tarrant. Tried below before Hon. W. D. Harris.

*Wynne, McCart & Bowlin* and *Carden & Carden,* for plaintiff in error.

*Glass, Estes & King, W. P. McLean,* and *E. B. Perkins,* for defendant in error.

CONNER, CHIEF JUSTICE.—We take the following statement of this case from the brief of plaintiff in error.

"This suit was instituted by plaintiff in error in the District Court of Tarrant County, Texas, for the recovery of $20,200 for personal injuries alleged to have been sustained by him, while in the service of the defendant in error, through the negligence of the latter, and among other things he alleged that his injuries were caused by reason of the negligence of the engineer of defendant in error in charge of the engine propelling a train containing a caboose in carelessly, negligently, and recklessly operating said engine and train, causing the same to give a violent and sudden lurch, throwing plaintiff from the cupola of the caboose, where plaintiff was in the performance of his duties, to the floor of said caboose, painfully, seriously, and permanently injuring him. He further alleged that his injuries were due to defendant's negligence in not having its train properly coupled and in providing unsafe and defective coupling appliances, which caused said train to separate, and thereafter the two parts to collide, the force of which collision caused plaintiff to be thrown to the floor of the caboose; and further, that his injuries were due to the negligence of defendant in furnishing on its trains unsafe and unsuitable drawheads and coupling appliances, and in permitting its track and roadbed at said place to become unsafe, dangerous, uneven, and rough.

Defendant in error pleaded a general demurrer and general denial, and substantially that plaintiff in error was guilty of negligence which was the proximate cause of his injury, and that his injuries were the result of an unavoidable and unforeseen accident, and was the result of a risk assumed by plaintiff in error when he entered the service of defendant in error, and that his injuries were caused by failing to obey the rules and regulations of defendant, by reason of the fact that it was his duty to be on top of the train at the time of the accident, which duty he failed to discharge, and that defendant used due care in maintaining and inspecting its engines, cars, and couplings, and in the construction and maintenance of its roadbed and tracks and keeping the same in repair."

A trial before a jury, on December 15, 1900, resulted in a verdict and judgment in favor of defendant in error.

The point most seriously urged in behalf of a reversal arises from the action of the court in giving the following special instruction, to which error is assigned, to wit: "The evidence in this case fails to show that the roadbed of defendant at the time and place of the alleged injury was out of repair or rough or unsafe, and you will not consider that ground of negligence alleged in plaintiff's petition."

One theory of plaintiff's case was that about midway of the freight train upon which he was a brakeman a patent coupler on one of the cars opened or became detached from the like coupler on the adjacent car, thereby causing a separation of the cars and an uncoupling of the air hose or brake with which part of the train was supplied; which in sequence caused the forward part of the train to suddenly stop and

thereby produce such jar, when the detached cars behind ran against the forward car, as to throw plaintiff in error from his position in the cupola of the caboose to the floor of the car below, and to injure him as alleged. While a number of witnesses testify that the accident or injury was caused in this manner, we think it evident from the whole testimony that the conclusion that the train separated is but an inference drawn from the fact that the air hose between the cars indicated was immediately thereafter found uncoupled. No witness testifies that he saw such separation and the cars were found coupled as usual, though the air was uncoupled as stated. The results were natural consequences of such separation of the train, but the evidence does not exclude the conclusion that such results might also have been occasioned by some sudden jerk caused in the operation of the engine, or perhaps by an unaccounted for separation of the air brakes without a separation of the cars. It is also a fact that no witness testified that the roadbed or track of defendant in error was out of repair, rough, or unsafe at the time and place of the accident or supposed separation of the train. There was testimony, however, tending to show that cars coupled as these, running over a rough track, were liable to become uncoupled, and it is hence insisted that it should have been left to the jury to determine whether there was such rough track, and whether defendant in error was guilty of negligence in relation thereto from the mere fact of accident or injury as shown. We have not been able to agree with this contention. In addition to what we have stated above it was shown that the couplers mentioned might also have been detached by means of a lever constructed for that purpose at the side of the car, although there was no evidence that any person had so operated the lever. There was also evidence to the effect that couplers of the kind stated at times would become separated from other causes. E. F. Phillips, who was the conductor of the train at the time, and who testified in behalf of plaintiff in error, among other things, testified on this subject: "This coupler was a master car builder's coupler. There are several kinds of automatic couplers, the Tower, the Anchor, and several others, all on the same principle, however. Whenever from any cause the pin pulls out the train uncouples. They ordinarily uncouple and we can't tell what does it, but there are instances where they uncouple if you have too much slack in the drawhead, that is, spring in the drawhead, and let the drawhead extend out from the car and that will raise the link and raise the pin; that is one case, and another is if the pin is a little worn. If there is slack in the spring of the drawhead, that is, if the timbers are worn, that is, the draft castings that are in the draft timbers of the car, if it becomes worn and lets the spring of the drawhead too far, when it pulls out so far it will raise this chain that is fastened to the pin and is also fastened to the car on a deadwood on the end of the car, if there is too much spring and too much give in the spring of the drawhead and it pulls out too far, it will pull the pin out. Another cause is, if this pin that drops in there is a little bit worn and gets wet, the slug will some-

times slip up and uncouple itself in wet, rainy weather, if the pin is a little bit worn. The pin is not more liable to do that the lighter it is; don't know that the weight of the pin has anything to do with it, but if the pin is worn to a bevel under the slug in rain they will come uncoupled, and they very often come uncoupled when we can't account for it."

This evidence is quoted merely to show that if it be conceded that the train separated it by no means follows that it was caused by a rough track or roadbed. Numerous cases might be cited where it has been held in the case of passengers that an unusual accident or injury will authorize the presumption of negligence, and it is insisted that this principle applies in behalf of an employe. The recent case of Railway v. McCray, 34 Southwestern Reporter, 95, cited in support of this contention, was one in which the death of McCray, who was in the service of the railway company, was caused by a steel rail falling from a flat car on which it was loaded. In that case, however, it was shown that the accident could not have happened had the car been properly loaded, and the inference of negligence in loading the car was therefore held to be justified. So also in the case of Railway v. Haden, the Court of Civil Appeals for the Fifth District, in an opinion not yet published, but which counsel have kindly furnished us, held that an inference of negligence on the part of the master in failing to furnish or keep in repair the machine upon which Haden was working was justified by proof of the injury, and further evidence that excluded the idea that the injury could have happened from a cause other than some defect in the machinery. The facts of this case, however, fail to bring it within the principle announced in the cases just cited. The evidence here by no means supports the conclusion that the separation of cars, if any, and the injury to plaintiff in error could have been alone caused by a defective track.

Ordinarily as between master and servant—employer and employe— the servant by his employment assumes all of the risks ordinarily incident to his employment, as well as the risk of injury caused by the negligence of a fellow servant, and it would seem that in a suit on the part of the employe the evidence to authorize recovery by him should not be left in such condition as to suggest that the injury is as reasonably referable to a cause within the domain of the servant's assumed risks as to the negligence of the master. It will be seen from the testimony quoted above that the proof indicates that uncouplings of the character here insisted upon are by no means unusual,—that they sometimes occur without being attributable to any ascertainable negligent act. Under such circumstances the burden was upon plaintiff in error to establish the fact of negligence charged, and the proof relied upon was not only insufficient under the circumstances to establish negligence in the particular now under consideration, but also required the court, when requested to give the charge objected to.

Mr. Black in his work on Proof and Pleadings in Accident Cases, section 5, says: "It is not necessary that the evidence be direct and posi-

tive; negligence may be proved as well by circumstances and presumptions, from which the inference or conclusion of negligence may be fairly drawn; but such presumptions and circumstances to be legally sufficient to rest verdicts upon, must be the conclusion from facts proven or admitted in the case, and not presumptions drawn from presumptions, which in all cases of legal evidence are too weak and uncertain to support judgments and verdicts." This is but declaratory of the general rule. See Railway v. Porter, 73 Texas, 304; Douglass v. Mitchell, 35 Pa. St., 440; Richmond v. Aiken, 25 Vt., 324. In the case of·Douglas v. Mitchell, supra, it is said (quoting from the head note) : "Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved and not themselves presumed; no presumption can be drawn from a presumption; if there be no fixed or ascertained fact from which the inference of another fact may be drawn, the law permits none to be drawn from it."

To adopt the contention of plaintiff in error would, we think, under the circumstances of this case, certainly contravene the principle here so clearly stated. Negligence, save in those cases in which it is to be necessarily inferred from the nature of the accident, as was the fact in the McCray and Haden cases, is ordinarily presumed from the happening of an unusual accident on the ground that the train, machinery, or appliances involved is under the control of the master, and that the condition thereof is therefore peculiarly within his knowledge. It is hence insisted that this principle would not apply in the case now before us, inasmuch as if the roadbed or track was defective or rough it must have been obvious,—as apparent to plaintiff in error as to any one else,—and there was an entire absence of effort on his part to offer direct proof of any defect in the roadbed or railway track. But without adopting this contention, we are of opinion that the duty that rested upon the defendant in error in respect to its track was that of ordinary care to safely construct and maintain it. It seems clear to us that to conclude that the cars became detached because the air brakes were found uncoupled, and to further conclude from this inference that the track or roadbed was rough, and then to further conclude that the master was guilty of negligence in respect thereto, is to base inference upon inference, and therefore violative of the uniform rule on that subject.

It is also earnestly insisted under the third, eighth, eleventh, and twelfth assignment that the court was in error in submitting the issue of contributory negligence, because there was no evidence requiring it. But we have not felt that we could so conclude under the rule laid down in the opinion by Chief Justice Gaines in Choate v. Railway, 91 Texas, 410. It was shown that the rules of the company were known to plaintiff. A rule required him to be on top of the train when entering stations, as was the fact here; there was evidence that the jar which threw plaintiff from the cupola was not greater than that occurring in ordinary couplings, and that had plaintiff in error been on top of the car as re-

quired by the rule he might not have been injured. There was also perhaps some slight evidence that the position assumed by him in the cupola of the car was not a secure one, and we feel hardly prepared to say that a voluntary violation of the rule, and the voluntary assumption of a more dangerous position in the cupola, was not such evidence of contributory negligence as required the submission of the issue to the jury. It is true that the plaintiff in error testifies that he was directed by the conductor to remain in the caboose. If this be true, then, under the rules of the company he was required to obey the instruction, and hence was in the place of his ·duty. The testimony of the conductor, however, when considered as a whole, tended to contradict plaintiff in error on this point. So that as an entirety we can not say that the evidence was such as to authorize the court to assume that plaintiff in error in fact had been instructed to remain in the caboose and was free from negligence in assuming the position he was in at the time of the accident, and to therefore take the issue of contributory negligence from the jury.

Other assignments need but brief notice. The ground of objection to the excluded evidence mentioned in the twenty-seventh assignment of error is not stated. The testimony of the witness Bolin substantially embodied the excluded evidence mentioned in twenty-third assignment of error, and the application of the plaintiff in error for a situation as brakeman was admissible, if for no other reason, to show his acceptance of and agreement to the rules and regulations· of the company; the objection being to the whole and not to such portions as were immaterial.

Other assignments will be overruled without mention, we having found no reversible error therein. The issues raised by the legal evidence having been fairly submitted to the jury, the verdict will not be disturbed. The judgment is affirmed.

*Affirmed.*