Davenport & Crain, of Wichita Falls, for appellant.

A. A. Dawson, State's Atty., of Austin, for the State.

CHRISTIAN, J. In the first count of the indictment appellant was charged with transporting intoxicating liquor, and in the second count with possessing intoxicating liquor for the purpose of sale. Both counts were submitted to the jury with the instruction that, if the jury should find appellant guilty "under either or both counts of the indictment," the punishment would be assessed at imprisonment in the penitentiary for not less than one nor more than five years. A verdict was returned finding appellant guilty of "possession and transporting whisky as charged in each count of the indictment" and the punishment was assessed at confinement in the penitentiary for one year. The court received the verdict and entered judgment on both counts of the indictment. The sentence followed the verdict and judgment, condemning appellant to confinement in the penitentiary for one year for the offenses of possessing intoxicating liquor for the purpose of sale and transporting intoxicating liquor. Appellant's bill of exception No. 4 presents the question to this court for revision.

A conviction for two felonies on one indictment cannot be had. In this case appellant was charged in the indictment with two separate felonies. The judgment cannot be reformed without ignoring a part of the verdict. The identical question presented here was discussed in Opinion No. 11860, T. B. Wooten v. State (Tex. Cr.) 15 S.W.(2d) 635, delivered March 13, 1929, and not yet (officially) reported. In that case Judge Hawkins, speaking for the court, said:

"In the present case the verdict specifically found appellant guilty of two felonies: (1) Possessing intoxicating liquor for the purpose of sale; and (2) transporting such liquor. If the court below had undertaken to enter a judgment condemning him to be guilty of only one of such felonies, it would have ignored the specific finding of the jury on the other felony, which the trial court would have had no right to do. This court cannot, under guise of reforming the judgment ignore a part of the verdict and do that which the trial court had no authority to do."

The judgment is reversed, and the cause remanded.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals, and approved by the court.

## INTERNATIONAL & G. N. R. CO. v. FINGER et al. (No. 7316.)

Court of Civil Appeals of Texas. Austin. Feb. 8, 1929.

Rehearing Denied March 20; 1929.

R. E. McKie, of San Marcos, F. C. Davis, of San Antonio, Andrews, Streetman, Logue & Mobley, of Houston, and Marshall Eskridge, of San Antonio, for appellant.

Will G. Barber, and Tom C. Johnson, both of San Marcos, for appellee Grace A. Finger.

Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellees Katherine L., Albert W., and James W. Finger.

BLAIR, J. Appellees, Katherine L. Finger, as administratrix and individually, and as guardian and next friend of her two minor children, Albert Willis and James Weston Finger; and Grace Alberta Finger, a minor, by her guardian and next friend, Tom Milhollan—sued the appellant, International & Great Northern Railroad Company for damages sustained on account of the death of Albert W. Finger, the husband of Katherine L. Finger and father of the children. Albert W. Finger was employed by appellant as a brakeman on its freight train, and at the time of his death he was making his regular run from San Antonio to Taylor, Tex. Appellees alleged that appellant "negligently permitted the brake beam and brake apparatus on one of the cars in said train to come down from its normal position and drag upon the ties and rails of the track so as to obstruct and interfere with the wheels and running gear of said car, thereby causing said car to jerk, jolt and lunge in a violent and unusual manner * * * at or near the bridge over the Blanco River in Hays County, Texas, and that deceased was thrown or caused to fall from said moving train, which resulted in his death." Appellees also alleged that they did not know whether deceased was engaged in promoting interstate commerce at the time of his death, but that if it should appear from the evidence that he was so engaged, and that the Federal Employer's Liability Act (45 USCA §§ 51–59) controlled the case, then appellees prayed that the law applicable be applied. Appellant answered by a general denial, and by special answer alleged that the train upon which Finger was engaged was transporting freight constituting interstate commerce.

The case was submitted to the jury upon special issues, and the jury found for appellees both under the rule of common-law negligence as applied in Texas and under the Federal Safety Appliance Act (45 USCA §§ 1–46). The amount of damages assessed was $45,000, apportioned by the jury as follows: $15,000 to the wife, and $10,000 to each of the children. Judgments were rendered accordingly.

■ As preliminary, appellees suggest that since appellant alleged deceased was engaged in promoting interstate commerce at the time of his death, but failed to offer any proof on the issue, the jury's findings involving the Federal Safety Appliance Act may be ignored. This contention is sustained by the case of T. & N. O. Ry. Co. v. Tilley (Tex. Com. App.) 6 S.W.(2d) 86, and we therefore pass to a consideration of the case as involving common-law negligence only.

Appellant predicates its appeal upon six general or abstract propositions which might apply equally as well to any case. Neither proposition refers to any assignment or assignments of error upon which it is based, and only the first two are followed by any statement from the record showing how the questions arose, or that any injury resulted because of the asserted error. The first two present the questions of whether there is any legal evidence to support the jury's findings (a) as to the negligence alleged; and (b) as to whether that negligence, if proved, was the proximate cause of Finger's death. We do not sustain either contention.

■ The record shows that the north-bound freight train upon which Finger was employed as rear brakeman left San Antonio about 10 p. m., on the night of September 8, 1926, with Taylor, Tex., in so far as the train crew was involved, as its destination. It left San Marcos at 2:45 a. m., on September 9, 1926, and no brake beam was missing when it left. Finger, while standing on the steps of the caboose, received a train order at 2:57 a. m. at Katy Junction, one mile north of San Marcos. The train then proceeded north over the Blanco River Bridge, which is five miles north of San Marcos. The conductor estimated that the train passed over the Blanco Bridge at the rate of twenty miles per hour. Proceeding the train passed through Kyle, three miles north of the bridge, and on to Austin, twenty miles north, where it was first discovered that Finger was missing, and was also discovered that the brake beam and the equipment attached thereto had been lost off the tenth car (Wabash 65628) from the caboose and the thirtieth car back of the engine. A search was begun about 7 a. m. for Finger at the instance of appellant by its employees, and later on in the day relatives

and friends of deceased joined in the search, which continued until about 9 o'clock on the following day, September 10, 1926, when Finger's body was found in the backwater underneath the Blanco River Bridge.

Witnesses who joined in the search for Finger testified that beginning about one mile south of the Blanco Bridge where deceased's body was found, something had dragged on the track, making marks on the cross-ties, which, according to appellant's experienced section foreman and section hand, "were similar to the marks of a dragging brake beam * * * some iron connected with the brakes." These marks were newly made. They were made by something dragging from a north-bound train, because the ties were first struck on the south side, and "in some places the ties were cut and split." These marks continued intermittently to a point 600 or 700 yards north of said Blanco Bridge, where a brake rod, answering the description of the one lost off the car in question, was found; thence about three miles north to Kyle, where at 6:30 a. m. September 9, 1926, appellant's section foreman found "a brake shoe, a part of a brake beam, and some brake rigging." The brake shoe was found in the frog of the main line track at the point it intersected with the south end of a switch line running through Kyle, and the other parts described were found a few feet farther north. These brake appliances answered the description of those lost off the car in question. The section foreman testified that "they were old and rusty and very much worn, and looked as if newly broken in several places." The piece of brake rod found appeared to be newly broken. Experts testified that when this rod became involved and dropped "the brake beam and brake rigging should come off a car and hang down * * * and drag until it would break off." Experts also testified that when these brake appliances "become old and rusty and very much worn," they are liable to come down and drag until broken off. Experts also testified that when these brake appliances are "old and rusty and very much worn," that condition is and should be easily discovered on inspection. The jury were authorized to reject the conclusion of appellant's inspectors that they gave the car in question a thorough inspection before it left San Antonio, because they testified to only a "sight" or cursory inspection, consuming at the most only three minutes, and the last inspection being in the nighttime with a lantern, which consumed only two minutes. From these facts and circumstances the jury could have reasonably inferred that appellant negligently sent out upon its road the freight car in question in such defective condition that it lost its brake beam, brake shoe, brake lever, and brake rigging before the train reached Austin.

■ That negligence, like any other issuable fact, may be proven by circumstantial evidence and by inferences reasonably drawn from facts proved, is settled by numerous Texas decisions. We cite the following as particularly applicable: Lancaster et al. v. Magrill (Tex. Civ. App.) 244 S. W. 1078 (writ of error refused); H. E. & W. R. Co. v. Boone, 105 Tex. 188, 146 S. W. 533; Hutcherson v. Amarillo St. Ry. Co. (Tex. Com. App,) 213 S. W. 931; Stalcup, Ft. Worth, etc., R. Co. v. Stalcup (Tex. Civ. App.) 167 S. W. 279. Appellant's contention, in this connection, that the jury could have as reasonably inferred that the brake appliances found were lost from another train or car, is without merit. The most reasonable inference would be that it was lost from the car minus such equipment when it reached Austin, which was the only car shown to have lost such equipment both as to location and in point of time. The appellant alone, under the record kept by it with reference to such matters, could have made proof that another car lost equipment answering the description of that found. Certainly appellees were only required to prove by reasonable inference that the brake appliances found came from the car in question, which they did.

■ Passing to a consideration of whether this defective condition of the brake appliances and their dragging along under the car in question caused Finger's death as alleged and as found by the jury, we conclude that the jury's findings are supported by legal evidence.

The drastic disturbance caused by a brake beam and brake equipment dragging along under a freight car, and the results incident thereto, were described by several experienced brakemen and the conductor in charge of this train, in substance as causing a terrific jerking and jolting of the car, to such an extent that no man could stand on his feet on the car, no matter what his experience had been or how active he may be; that the jerking and jolting comes spasmodically and unexpectedly, due to the fact that the beam or equipment break away and ride smoothly until they again strike the ties or a high rail joint, which knocks them back under the moving wheels. This disturbance is noticeable on cars in the immediate vicinity of the crippled car, and often it and cars near it are thrown off the track as the result of a dragging brake beam. These witnesses also testified that a dragging brake beam on a moving car was practically certain to throw a man from the top of the car, even though the car was not derailed.

Now, newly made marks indicating a dragging brake beam were found the day following the accident, commencing at a point about one mile south of the Blanco Bridge underneath which Finger's body was found. As rear brakeman it was his duty to be on top of the train near the rear, and it was his duty, if he noticed any unusual disturbance of his train, to go on top and ascertain what was

causing the disturbance. Finger had served as a brakeman for more than 15 years, and was careful and trustworthy in the performance of his duties. At and on the bridge there were two steel guard rails set eight inches inside the rails of appellant's track. One purpose of their being there was to prevent dragging brake beams from striking the ties. On the bridge directly above the point where Finger's body was found were marks of blood and skin, and also upon the beams and woodwork of the structure of the bridge just below the level of the ties. Finger's face and head were cut and bruised. His lantern was found a few feet north of these blood marks jammed between the ties on the bridge. At a point about 15 feet south of these blood marks was a high joint of the guard rail, the kind of high joint which the experienced railroad men testified would likely be struck by a dragging brake beam knocking same under the moving wheels and thereby causing a terrific jerking and jolting of the car. On Finger's person was the train order he had received at Katy Junction, and his watch which had stopped at 3:15. The conductor testified that the train passed over the bridge at about 3:15 a. m., September 9, 1926.

With reference to the location of deceased when the train crossed the bridge, witness Galbraith, who was head brakeman on this train, and who was sitting on top of the first car back of the engine, testified as follows: "I saw a light on top—looked like a light on top of that train, coming around the bend. * * * As to when I first began to see that light before we reached the bridge, it was when we were coming around that curve. * * * I guess that point is a quarter of a mile, something like that, from the bridge. As to where I saw that light with reference to the rear end of the train, well, it was close to the rear end. * * * The light disappeared about the time the light was on the bridge. * * * The light fulfilled the description of a lantern or light that was being carried by a brakeman on top of that train. * * * As to whose lantern I thought it was, well, if there was a lantern I would naturally think it was Mr. Finger's lantern."

It is admitted that if the above evidence is sufficient to show a light on top of the train at or near the Blanco Bridge, it was Finger's lantern. It was shown to be a very unusual occurrence for an experienced brakeman to fall from a moving train as the result of a misstep. Finger was shown to be experienced and careful and trustworthy in the performance of his duties, and to be a man of good health and habits. Conditions were shown to exist at the point the light was seen to disappear which would usually cause a terrific jerking, jolting, and lunging of a car with a dragging brake beam. The circumstances proved showed the car in question in this train to have had a dragging brake beam and

brake appliances at that point. We therefore conclude that the facts and circumstances detailed, which were established without any material dispute, strongly indicate that Finger was thrown from the car in question while in the performance of his duty as brakeman, and as the result of the jerking and jolting of the car caused by a dragging brake beam and appliance as found by the jury.

But the appellant insists that the jury's finding on the proximate cause of Finger's death is based upon mere conjecture and speculation, and arrived at by basing one presumption upon another, which is not permissible in law. We do not sustain the contention, and find the jury's verdict to be based upon reasonable deductions and inferences drawn from facts and circumstances proved. It is clear that Finger either fell from the steps of the caboose where he was seen standing when he received the train order at Katy Junction, or from the top of the train where a light fulfilling the description of his lantern was seen to disappear at or near the point his body was found underneath the bridge. From which place or position was it more reasonable for the jury, under the facts and circumstances proved, to infer that he did fall? Certainly not from the caboose steps, because experienced brakemen only fall from a moving train upon the happening of an unusual occurrence, and no such occurrence was shown with reference to the caboose. Clearly the jury could have more reasonably inferred that he fell from the top of the train where a light answering the description of his lantern was seen to disappear at or near the very place his body was found. His lantern was found there. Blood marks were found on the bridge directly above the place his body was found. His head and face were cut and bruised. And why did he fall? Either because of a misstep, which the evidence shows was improbable, or because he was thrown off the top of the train as the result of the drastic and unusual disturbance caused by the dragging of the brake beam and brake appliances on the car in question. His lantern was seen on top of the train in the vicinity of that car. Fresh markings indicating a dragging brake beam were found to begin about one mile south of the bridge. From these, and the fact that the car in question lost a part of its brake beam and brake appliance at intervals within three miles north of the bridge, the jury could have reasonably inferred that the unusual drastic disturbances caused by the dragging brake beam and appliances began at the point where the first markings were seen. A disturbance of this character was shown to be noticeable and to affect the cars in the vicinity of the car so involved. The car involved was the tenth car in front of the caboose, on the steps of which Finger was seen at Katy Junction. It was shown to be Finger's duty to go on top

of the train and locate any unusual disturbance of his train. The train was running at 20 miles per hour, and about three-fourths of a mile north of where the first markings indicating a dragging brake beam were discovered, a light answering the description of Finger's lantern appeared on top of the train in the vicinity of the crippled car. This light continued there for about one-fourth mile until it was at or near the Blanco River Bridge, where it disappeared. Fifteen feet south of the blood marks on the bridge was a high joint in the guard rail. It was just such high joint as the experts testified would be most likely to catch a dragging brake beam on a car going in the direction of the car in question, and to throw same under the moving wheels, which would usually cause such jerking and jolting that no man could keep his balance on the car involved or on those near it. These facts and circumstances, and reasonable inference to be drawn therefrom, point with reasonable certainty to the conclusion reached by the jury.

Appellant relies principally upon the following cases: M. K. & T. Ry. Co. of Texas v. Robeson (Tex. Civ. App.) 178 S. W. 862; M. K. & T. Ry. Co. v. Greenwood, 40 Tex. Civ. App. 252, 89 S. W. 810; Houston Lighting & Power Co. v. Barnes (Tex. Civ. App.) 152 S. W. 722; Missouri Pacific Ry. Co. v. Porter, 73 Tex. 304, 11 S. W. 324; Parks v. St. Louis S. W. Ry. Co., 29 Tex. Civ. App. 551, 69 S. W. 125; G. C. & S. F. R. Co. v. Davis (Tex. Civ. App.) 161 S. W. 932; T. & P. Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S. W. 3; Chicago, M. & St. P. R. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. Ed. 1041; St. L. & S. F. R. Co. v. Conarty, 238 U. S. 243, 35 S. Ct. 785, 59 L. Ed. 1290; Lang v. N. Y. Cent. R. Co., 255 U. S. 455, 41 S. Ct. 381, 65 L. Ed. 729; Kansas City Southern R. Co. v. Jones, 275 U. S. 514, 48 S. Ct. 35, 72 L. Ed. 401.

A reading of these cases show them to be easily distinguished in point of fact from this case, particularly with reference to the failure in each to show or indicate the point from where the deceased had fallen; while in this case we have evidence that a light answering the description of Finger's lantern was seen on top of the train in the vicinity of the crippled car, which light disappeared at or near the point Finger's body was found; and his broken lantern was found jammed between the ties at that point and some few feet north of the blood markings on the bridge. Each circumstantial evidence case must necessarily depend upon the particular facts and circumstances surrounding the particular case, and no hard and fast rule exists as to what character of proof will suffice. We think the first cases cited herein and the following cases more nearly parallel the facts in this case, and support our above conclusions: Houston Lighting & Power Co. v. Barnes (Tex. Civ. App.) 152 S. W. 722; Choctaw, O. & G. R. Co. v. McDade, 191 U. S. 64, 24 S. W. 24, 48 L. Ed. 96; McCray v. Galveston, H. & S. A. R. Co., 89 Tex. 168, 34 S. W. 95.

While appellant makes four other propositions, they are mere abstract propositions of law, not followed by any statement from the record, and are not briefed in accordance with the rules governing Courts of Civil Appeals; therefore we overrule them without discussion, and affirm the judgment of the trial court.

Affirmed.