## BURLINGTON–ROCK ISLAND R. CO. v. ELLISON et al.

### No. 2386.

Court of Civil Appeals of Texas. Waco.

Feb. 5, 1942.

Rehearing Denied March 12, 1942.

Thompson & Barwise and Luther Hudson, all of Fort Worth, and Bennett & Bennett, of Normangee, for appellant.

Collins, Williams & Garrison, of Lufkin, and R. W. Dean, of Navasota, for appellees.

TIREY, Justice.

This is the second appeal of a suit brought by plaintiffs against the Burlington-Rock Island Railroad Company for damages for injuries resulting in the death of W. L. Ellison. See Tex.Civ.App., 134 S.W.2d 306. The jury returned a verdict in favor of plaintiffs and the court rendered judgment accordingly. The defendant has appealed.

Error is assigned on two grounds: (1) the trial court erred in its failure to give a directed verdict to the jury, because there was no evidence showing that any negligence on the part of the defendant proximately caused the death of the deceased; (2) the court erred in rendering judgment in favor of plaintiffs against defendant on the jury's verdict, because the evidence was wholly insufficient to support any finding of proximate cause in connection with any issue of defendant's negligence. These complaints require a comprehensive statement.

The testimony adduced showed substantially that defendant's track runs in a northerly and southerly direction at the place of the accident, and at said point north, for a distance of 1500 feet, more or less, the track is straight, thereafter it curves slightly to the northeast; at the point of the accident there is a passing track 12 feet from the main line on the east side thereof and a switch track 21 feet from the main line on the west side; after crossing the switch track and before reaching the main line (the exact distance not given) one can see up the main track 1200 or 1500 feet; that close to the place where the body was found was a footpath which led diagonally across the tracks, which path runs in a southeasterly and northwesterly direction and which path leads from the town of Normangee, on the west side of the railroad, to the gin, operated by the deceased's son, on the east side thereof, a few yards off of the track immediately south of the place of the accident; said footpath had been used by the public for twenty-three years and was in daily use by an average of fifty people; it was a well-beaten footpath and was worn down in places 6 inches into the earth; there were no warning signs as to the use of said path, and no objection had been raised to its use; north of this path, about 460 feet, is the depot located on the west side of the main track, and north of that is the main street crossing; there is a public crossing immediately south of where the footpath crosses the tracks, the exact distance not given, and a little farther south, the exact distance not given, is another public crossing; it was the duty

of defendant to blow four blasts of the whistle for each of said crossings at least 80 rods before reaching each of them, and it was the duty of defendant to begin ringing the bell when the train was a quarter of a mile from the main street crossing and to ring it continuously thereafter until it had passed each of the other crossings; that standing on the main track at the point of the accident, an approaching train from the north would come into one's view at a distance of 2500 feet from said point. At about 10:30 on the morning of the accident defendant's stream-lined train, traveling in a southerly direction and on time, passed over the track at the place of the accident at about 80 miles per hour, its usual speed; it was equipped with an especially loud horn; the front part of the train was painted red; it was pulled by a Diesel electric engine and it did not make a noise like a steam locomotive; there was a very high wind blowing from the south, which wind was strong enough to interfere with the hearing of the sound of the whistle or bell of a train approaching said point from the north; a person approaching the track on the footpath from town, going to the Ellison gin, would have his view of a train approaching from the north obstructed, at least partially, by the depot until he got some 24 feet, more or less, from the main line track; one traveling the footpath, going from town to the gin, would be walking in a southeasterly direction and would have his back turned slightly to the north and, necessarily, his vision would not be focused in the direction of a train approaching from the north unless he turned his body slightly to the left or turned his head slightly to the left and looked over his left shoulder; the deceased was eighty years of age, in full possession of his faculties, and his hearing and eyesight were good, and he frequently used the path to go from town to his son's gin and had been at the gin on other occasions when this train had passed through Normangee; on the day of the accident deceased went to town with one of his sons (W. N.) in a wagon; some forty-five minutes before the accident he got out of the wagon and went to the bank; the son drove down to his brother's gin and was there at the time of the accident; while there he saw his father approaching the track, walking about 1½ or 2 miles per hour, and saw the approaching train close to the depot, but he could not remember its exact location, and he said that the wind was so high that it would have been almost impossible to have heard any whistle or bell of the train; he did not know that his father had been struck by the train until his brother who operated the gin told him; the deceased was last seen by him prior to the accident coming down the path to the gin at a point estimated as being 50 to 150 feet from the track. There is no direct testimony that anyone saw deceased at the time of or just prior to his being struck. The deceased's body was found immediately after the train had passed, and the body was lying on the passing track about 10 feet, more or less, from the main line, one foot on the east rail, the other foot drawn up, and the head near the west rail and at a point on the passing track about even with the point where the path crosses the main line. The body had marks on the back and shoulders, the back was badly bruised and the neck and shoulders crushed, and on the back of deceased's coat there was a streak of red paint which was the same color as the red paint on the front of the train. It was the opinion of the physician who examined deceased that Ellison was struck in the back and that same caused his death. The train stopped about one-fourth of a mile from the place of the accident and one witness testified that he was the first one to reach the train after it stopped and that he spoke to the fireman on the train and that the fireman said: "We hit an old fellow down there." This witness further testified that there was a smudge on the front of the train. Jack Ellison, who operated the gin, said the whistle was blown at least before the train got to the depot, but he did not testify to hearing any other alarm. None of the other witnesses heard the whistle, but none of them testified positively that the whistle was not blown or that no other alarm was given. The plat attached to the statement of facts showed a whistle post near the point where the curve begins; it also shows a whistle post just north (the exact distance not given) of the main crossing north of the depot.

The defendant interposed a general demurrer and general denial, and specially pleaded that certain negligent acts of deceased were the proximate cause of his death and the sole proximate cause thereof. It admitted that Ellison was killed by coming in contact with defendant's train. It was shown that the engineer and fire-

man on the train in question were still in the employ of the defendant, but defendant offered no testimony, save and except some photographs showing the tracks at the point of the accident and immediately north. These photographs were introduced while the plaintiffs were putting on their evidence, and when the plaintiffs rested, defendant rested.

The jury found in favor of plaintiffs on discovered peril and further convicted the defendant of negligent speed, failure to blow the whistle and ring the bell, failure to have the train under control, failure to keep a proper lookout, failure to have a siren on the train, failure to sound the siren on the train, and failure to reduce the speed of the train; and further found that each of them was negligence and a proximate cause of the accident. The jury acquitted the deceased of all negligence (not assailed), and further found that it was not an unavoidable accident.

■ Defendant's first proposition is substantially "that the evidence was wholly insufficient to show that any negligence on the part of the defendant proximately caused the death of the deceased, the evidence merely showing that the deceased was struck by one of defendant's trains, which was running between 70 and 80 miles an hour, which was the usual speed of said train, and that said deceased was last seen some few minutes before the train passed some 50 or 150 feet from the track, and there is no evidence as to deceased's conduct thereafter, nor as to his position on or near the track just prior to the accident, and there is therefore no showing that any of the alleged negligence was, or could have been, a proximate cause of his death, and therefore this case should be reversed and rendered." We cannot agree with this contention. One witness testified, without contradiction, that he spoke to the fireman on the train in question, which stopped more than one-fourth of a mile from the accident, and the fireman said that they had hit an old man. The record shows that the fireman and engineer on said train were in the employ of the defendant company at the time of the trial and were not on duty, and defendant made no attempt to account for the absence of the fireman and the engineer from the trial. In the case of Texas & P. Ry. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049, point page 1052, Justice Williams said: "The manner in which

their train passed the point of the accident and proceeded on its way indicates strongly that those on the engine did not know of the occurrence." See Galveston City Ry. Co. v. Hewitt, 67 Tex. 473, 3 S.W. 705, 60 Am.Rep. 32; Brown v. Griffin, 71 Tex. 654, 9 S.W. 546. We think no such inference can be fairly drawn from a careful consideration of all the facts and circumstances at bar, but rather the contrary appears and the jury so found. The general rule is: "Whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed. No presumption can be drawn from a presumption. If there be no fixed or ascertained fact from which the inference of another fact may be drawn, the law permits none to be drawn from it." Parks v. St. Louis S. W. R. Co., 29 Tex.Civ.App. 551, 69 S.W. 125, point page 127. Do the facts and circumstances raise by inference the issue of causal connection between the negligent acts and omissions of defendant and the injuries to the deceased? We think so. The deceased approached the point of the accident from the west side of the main track, which was on the same side of and to the right of the engineer operating the train. If the engineer on the train had been looking in the direction in which the train was going, when the train reached a point some 1500 feet, more or less, north of the accident, Ellison, approaching the track on the path from the west, would have come into his line of vision about 24 feet before reaching the main track. The train was traveling 117.2 feet per second, and the evidence is undisputed that Ellison was walking as you would expect a man eighty years old to walk, that he was walking 1½ or 2 miles per hour, that he was not hastening, that he could walk and stop just like an ordinary person, and that the wind was strong enough that day to make his walking more difficult. From the time the train reached a point 1500 feet north of the scene of the accident approximately twelve seconds elapsed before it reached the scene of the accident. Inasmuch as it is admitted that the train struck deceased and it is shown that the deceased was thrown to the east and to the left of the main track, we think the inference is inescapable that he had gotten to the east side thereof or that he had gotten just beyond it but not far enough to keep the train from striking him. Since there is no dispute that a part of the train

was painted red and that there was red paint on the back of deceased's coat and that his back was badly bruised and his neck and shoulders crushed, we think the jury would have the right to infer that deceased was struck in the back while he was walking across the track or in close proximity thereto.

Since it is admitted that defendant's train struck deceased and since the jury has found that the train was being operated at a negligent rate of speed and that the defendant was guilty of further negligent acts, to-wit, failure to ring the bell, blow the whistle, sound the siren, reduce the rate of speed and keep a proper lookout, can we say that the issue of proximate cause was not raised by inference from the facts and circumstances surrounding the injuries to Ellison? Since there was testimony to the effect that deceased's health was good, that he always walked fast and not slow, and was active all of the time, did the jury have a right to infer from all the facts and circumstances that if the defendant had kept a proper lookout, rung the bell, blown the whistle, sounded the siren, or reduced the speed of the train, or any one of them, Ellison would have extricated himself from his dangerous position? We think so. Washington v. Missouri, K. & T. Ry. Co., 90 Tex. 314, 38 S.W. 764; Shifflet v. St. Louis S. W. Ry. Co., 18 Tex.Civ.App. 57, 44 S.W. 918, writ refused. "The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Texas & Pac. Ry. Co. v. Guidry, Tex.Civ.App., 9 S.W.2d 284, 285, writ refused, affirmed 280 U.S. 531, 50 S.Ct. 159, 74 L.Ed. 596. "The test as to whether a given act may be deemed the proximate cause of an injury, is simply whether in the light of all the attending circumstances the injury was such as ought reasonably to have been anticipated as a consequence of the accident." Galveston, H. & S. A. Ry. Co. v. Bell, 110 Tex. 104, 216 S.W. 390, 391. "Whether, in any given case, the act charged was negligent, and whether the injury suffered was, within the relation of cause and effect, legally attributable to it, are questions for the jury." Mexican Natl. Ry. Co. v. Mussette, 86 Tex. 708, 26 S.W. 1075, 1080, 24 L.R.A. 642. Now, bearing the above rules in mind and considering the evidence adduced, none of which was contradicted, and bearing in mind particularly that Ellison was in possession of his faculties and that his hearing and eyesight were good and that he frequently used the path to go from town to his son's gin and that he had been at the gin on other occasions when this train passed through Normangee and that he was in good health and active and that the jury acquitted deceased of all acts of negligence, was the jury authorized to infer from all the facts and circumstances adduced that the negligence of the defendant was the proximate cause of Ellison's death? Justice Williams, in that outstanding opinion in Texas & P. Ry. Co. v. Shoemaker, supra, said, in part: "Our reference to the last case [referring to Texas & N. O. Ry. Co. v. Crowder, 63 Tex. 502, 505] makes it proper for us to say that there is no presumption that the deceased were guilty of contributory negligence, and that the burden of proof was not upon plaintiffs to show that the deceased were not so guilty." See also Gulf, C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 30 S.W. 902, 28 L.R.A. 538. Since the deceased was acquitted of all negligence and the finding was not attacked, the sole question here is whether the issue of proximate cause may be inferred from the facts and circumstances adduced. In this case it was the duty of defendant to keep a proper lookout, to ring the bell, blow the whistle for the main crossing immediately north of the depot and north of the accident, as well as to blow the whistle and ring the bell for the two public crossings that were immediately south of and in close proximity to the scene of the accident, and to ring the bell continuously until the train had passed each of said crossings. Under this record can this court invade the province of the jury and say that the failure of the defendant to keep a proper lookout and to give the warning signals, or any one of them, had no causal connection with the death of the deceased? We think not. We are of the further opinion that the evidence is sufficient to support the jury's finding of proximate cause.

The judgment of the trial court is affirmed.