### COMET MOTOR FREIGHT LINES et al. v. HOLMES et al.

No. 2542.

Court of Civil Appeals of Texas. Tenth District.

Oct. 21, 1943.

Rehearing Denied Dec. 2, 1943.

Cantey, Hanger, McMahon, McKnight & Johnson and J. A. Gooch, all of Fort Worth, for appellants.

Bouldin & Bouldin, of Mineral Wells,. for appellees.

RICE, Chief Justice.

In a trial to the court, without the intervention of a jury, judgment was rendered awarding to Mrs. Grace Holmes and her minor daughter, Laura Louise Holmes,. the sum of $15,000 by way of damages. against appellants Homer Crabb and Comet Motor Freight Lines because of fatal injuries allegedly inflicted on the person of Benton Holmes, husband and father respectively of appellees, by the alleged negligence of appellants. From the joint and several judgment appellants have perfected their appeal.

No request was made for the filing by the trial judge of his findings of fact and conclusions of law, and none were filed.

Appellants' first assignment of error is: "The court erred in granting judgment to. the plaintiffs and against the defendants on the ground that there was no identity between the defendants and the death of Benton Holmes, and certainly there was no negligence on the part of the defendants which could have been the proximate cause of the death of Benton Holmes, and the plaintiffs failed to discharge the burden of proof imposed on them in making out their case."

Plaintiffs did not rely on the rule of res ipsa loquitur, but pleaded and relied on specific acts of negligence of appellant Homer Crabb, allegedly done and performed while acting within the scope of his employment as the agent of the appellant Comet Motor Freight Lines, a corporation.

It is without dispute that Benton Holmes, on January 11, 1942, while on or contiguous to state highway 281, between Perrin and Mineral Wells, Texas, received violent, external injuries from which he died shortly thereafter.

J. E. Strickel, a witness for plaintiffs, testified substantially: That between 12 and 12:30 P.M. on January 11, 1942, he and his family left the town of Perrin, Texas, in an automobile and proceeded south on state highway 281 to his home in Mineral Wells; that he drove at 50 miles per hour, did not stop enroute, and reached his destination about 1 o'clock that same afternoon. On the outskirts of Perrin he passed an old automobile proceeding south on said highway at about 20 miles per hour, and did not see this car again; thereafter he overtook three freight trucks being driven south on said highway at a maintained speed of 50 miles per hour. About six miles south of Perrin he increased his speed to 60 miles per hour and passed these three trucks without getting any of the wheels of his car off the road. He had some difficulty in passing the trucks, they were "wobbling around", swerving to and fro, sometimes off the pavement on the right and sometimes across the center line on the highway. Shortly after passing these trucks he reduced the speed of his car to 50 miles and maintained this speed until he reached Mineral Wells. About one-half mile south of the point on the highway where he had passed the trucks above mentioned he saw the gasoline truck of Benton Holmes facing south and parked on the (west) right-hand side of the highway. Witness was not positive but was of the opinion that the gasoline truck was parked completely off the highway. When he first saw deceased, the latter took a few steps from the west side of his truck to the east side, and when witness passed him he was standing at the rear of his truck at its northeast corner. Holmes was then looking northeast. Witness was acquainted with Holmes, spoke to him as he passed; and noticed nothing wrong with him. In passing the oil truck it was witness' opinion that he drove straight on and did not turn his car. It was further witness' opinion that if Holmes had stayed off the highway where his truck was parked, a car could go directly on that side and never touch his truck. Witness was of the opinion that he passed the Holmes truck about 12:30 P.M. The pavement on the highway was of ordinary width. Witness saw no other cars between Perrin and the gasoline truck except the old model car and the three freight trucks above mentioned; he saw no other car as he passed the gasoline truck or on down the highway toward Mineral Wells. The gasoline truck was parked on the highway about 200 yards from the intersection of the Oran Road. Over the general objection of defendants' attorneys that it was an "ex parte statement", plaintiffs introduced in evidence part of a written statement, signed and sworn to by the defendant Crabb, between 5 and 6 o'clock P.M. on January 11, 1942, the day that Holmes was injured. The portion of the statement so introduced reads as follows:

"I, Homer Crabb, after being duly sworn to depose and say:

"I was driving south on Highway 281, in a Comet Line truck, and at a point about twelve miles north of Mineral Wells, I saw a truck, a gasoline truck, parked on the right side of the road, about a foot from the pavement, I went on by the truck, about seventy-five yards * * * (omission) * * * I then stopped the truck in about twenty feet and went back to the scene where the gasoline truck was stopped. I saw a man lying in the road in front of his truck about five or six feet. He was on the pavement, but was barely on the pavement.

* * * (paragraph omitted) * * *

"I did not see the man in the road when I passed by, nor did I see him anywhere around the truck.

* * * (short paragraph omitted) * * *

"There was some clothing strewn down the road from where the body was. This happened on the 11th day of January, 1942.

"(Signed) Homer Crabb."

Charles A. Roberson, Jr., introduced by plaintiffs, testified substantially as follows: Witness was an employee of a funeral home in Mineral Wells, when, at about 1 P.M. on January 11, 1942, he was informed of an emergency call on highway 281, about eleven miles out from Mineral Wells. When he reached the scene of the accident he found a man lying on the ground with a blanket over him, and transported him in the ambulance to the hospital in Mineral Wells. Witness saw a freight truck parked on the west side of the highway headed south, near the scene of the accident; he also saw an oil truck facing south, parked on the side of the road north of the freight truck. When he arrived the injured man was lying about 20 feet in front of the oil truck with his head to the north. There had been people at the scene of the accident when he arrived but he did not know any of them. He did not see any trucks except the two

above mentioned. The lower part of the injured man's clothing was torn off. He saw clothing in front of the oil truck but did not notice any clothing on the highway or in front of the big truck.

The foregoing constitutes all of the testimony tending to throw any light upon the cause of the fatal injuries to the deceased. Homer Crabb did not testify; the defendants introduced no testimony.

■ It was the prerogative of the trial judge before whom the case was tried without a jury to weigh the evidence as a whole and give to it such probative force as in his opinion it was entitled to, harmonizing, as far as reasonable, the conflicts in the statements of the witnesses. Shaw, Banking Comm'r., v. Ciesielski, Tex.Civ.App., 19 S.W.2d 107.

■ When the sufficiency of the evidence is challenged, the evidence and all legitimate inferences therefrom must be considered in its most favorable aspect in support of the judgment, excluding all unfavorable and contradictory evidence.

■ When evidence is conflicting and the trial judge sits as the trier of the facts as well as of the law, the judge stands in the same relation to the case as a jury, and is the judge of the credibility of the witnesses and the weight to be given to their testimony. Worth Finance Co. v. Hilliard Motor Co., Tex.Civ.App., 131 S. W.2d 416; Corn v. First Texas Joint Stock Land Bank of Houston, Tex.Civ.App., 131 S.W.2d 752.

The plaintiffs alleged that Homer Crabb was an employee of defendant Comet Motor Freight Lines and was acting within the scope of his employment in driving a truck of said corporate defendant on highway 281 at the time and place in question; that in so operating said truck Homer Crabb committed specific acts of negligence, each of which was the proximate cause of the injuries received by deceased.

■ The burden rested upon plaintiffs to establish by evidence every material issue of fact tendered by their pleadings and essential to their recovery. Not only must negligence upon the part of the appellants be shown, but also the causal connection between the negligent act or omission and the injury. Neither negligence or causal connection will be presumed from the fact of the injury alone, but it must be proved by competent evidence. Texas & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049.

No duty rests upon a defendant to explain his connection with a tragedy such as this, until the plaintiff has produced sufficient proof to prima facie sustain his cause of action. Texas & P. R. Co. v. Shoemaker, supra. Negligence, like any other issuable fact, may be proved by circumstantial evidence, and by inferences reasonably drawn from a fact proved. International & G. N. R. Co. v. Finger, Tex. Civ.App., 16 S.W.2d 132. However, if an inference of facts consistent with no liability is just as valid as an inference of facts legally resulting in liability, the trier of the facts is not warranted in finding the facts of liability on an inference. Metropolitan Casualty Ins. Co. v. Woody, Tex. Civ.App., 80 S.W.2d 771.

And "whenever circumstantial evidence is relied upon to prove a fact, the circumstances must be proved, and not themselves presumed. No presumption can be drawn from a presumption. If there be no fixed or ascertained fact from which the inference of another fact may be drawn, the law permits none to be drawn from it." Parks v. St. Louis Southwestern Ry. Co., 29 Tex.Civ.App. 551, 69 S. W. 125, point p. 127; Missouri Pacific R. Co. v. Porter, 73 Tex. 304, 11 S.W. 324.

■ Viewing the evidence adduced on this trial and all legitimate inferences therefrom in its most favorable aspect in support of the judgment, and applying the foregoing rules of law thereto, we have concluded that it is insufficient to support the implied findings of the trial court. In reviewing the testimony, we have given consideration to the ex parte statement of the defendant Homer Crabb which the trial court admitted over the general objection of appellants' attorneys.

If it be conceded (without so deciding) that the trial court could have inferred from the facts and circumstances in evidence: (1) that one of the three freight trucks owned and operated by the Comet Motor Freight Lines collided with the body of Benton Holmes; (2) because of some pleaded negligent act or omission of one of its employees; and (3) that such act or omission was the proximate cause of the injury suffered by Benton Holmes; where is the evidence, circumstantial or otherwise, proving or tending to prove that the truck which collided with Benton Holmes was being operated by defendant Homer Crabb? There is no evidence in the record from

which it could be inferred that Homer Crabb was driving the lead or the middle or the rear of the three trucks which one of the witnesses testified he passed one-half mile north of where Benton Holmes had parked his truck. The plaintiffs alleged that the truck which injured Holmes was then being operated by Homer Crabb. The burden was upon them to introduce admissible evidence tending to support this allegation. This burden they have failed to meet. In our opinion, from the facts and circumstances revealed by this record, the inference could as logically be drawn that either one of the other trucks, collided with Holmes as that the truck being driven by Crabb did so.

■ Being of the opinion that appellants' assignment of error invokes our jurisdiction both as to the sufficiency of the evidence as well as to there being no evidence to sustain the implied findings of the trial court, we sustain the assignment as to the insufficiency of the evidence. Because we cannot say that this case has been fully developed, the judgment of the trial court is accordingly reversed and this cause is remanded rather than here rendered. Lanford v. Smith, 128 Tex. 373, 99 S.W.2d 593, pars. 3 and 4, p. 594.

Reversed and remanded.