SHAW, Banking Commissioner, v. CIESIEL-SKI et al. (No. 9309.)

Court of Civil Appeals of Texas. Galveston. June 13, 1929.

H. L. Lewis, of Navasota, for appellant.

Haynes Shannon, of Navasota, and T. P. Buffington, of Anderson, for appellees.

LANE, J. This suit is one prosecuted by John, Tony, Frank, and Joe Ciesielski and Annie Dobinski, heirs of Stash Ciesielski, deceased, against James Shaw, banking commissioner of the state of Texas.

The plaintiffs alleged that John Ciesielski was the executor of the last will and testament of Stash Ciesielski, deceased; that at the time of the death of Stash Ciesielski he had on deposit in the Farmers' State Guaranty Bank of Navasota, Tex., the sum of $4,-160; that the bank was then insolvent, and its doors had been closed by the banking commissioner of Texas on February 12, 1926; that, when said deposit was first made in the bank by Stash Ciesielski, it was an interest-bearing deposit, but that, on the demand and order of John Ciesielski, executor, in person and by his attorney, the deposit had been changed from an interest-bearing one to an open checking account more than 90 days before the doors of the bank were closed, and

that, after such change was made, John Ciesielski, as executor, had checked out all of the deposit except the sum of $1,260.49; that such deposit was secured by the state guaranty fund, as provided by article 446, Revised Statutes of 1925; that proof was made of the claim as required by law, and the banking commissioner refused to allow it as a claim secured by the guaranty fund.

The defendant banking commissioner, by his original answer, demurred generally to the plaintiffs' petition, and made general denial of the allegations of the petition.

The cause was tried by the court without a jury, and judgment was rendered in favor of John Ciesielski, executor, and the other plaintiffs against James Shaw, as banking commissioner of the state of Texas, for the sum of $1,260.49, and in such judgment it is recited that the claim is an open, simple deposit, unsecured and noninterest-bearing claim, and not a time deposit; that the same was secured by the Guaranty Fund Law, and that James Shaw should pay said sum out of such fund, $1,000 to John Ciesielski, and $260 to all the plaintiffs jointly, share and share alike.

Commissioner James Shaw has appealed.

By article 447, Revised Statutes of 1925, it is provided that any bank deposit bearing interest, any secured deposit, any certificate of deposit, whether bearing interest or not, and any other kind of interest-bearing deposit that shall have been changed to a noninterest-bearing and unsecured deposit within 90 days prior to the closing of the bank, shall not be protected or insured under the bank guaranty fund.

The undisputed evidence shows that Stash Ciesielski deposited in the Farmers' State Guaranty Bank of Navasota, Tex., $4,000; that such deposit was an interest-bearing deposit, and that it remained such up to July 11, 1925, at which time Stash Ciesielski died; that he left a will, and John Ciesielski qualified as the executor of the will.

The sole controversy between the plaintiffs and the defendant was as to whether or not the deposit made by Stash Ciesielski was changed from an interest-bearing deposit to a simple, unsecured, noninterest-bearing checking account 90 days prior to the closing of the bank, which occurred on the 12th day of February, 1926.

The undisputed evidence shows that the deposit of $4,000 was made by Stash Ciesielski on or about May 24, 1924, as an interest-bearing deposit; that one year's interest had been added to such deposit on or about May 25, 1925, making a total amount of $4,160; that the depositor died on July 11, 1925; that he left a last will, by the provisions of which his son John Ciesielski was made executor thereof; that John Ciesielski filed said will for probate in July, 1925, and the same was

admitted to probate on August 27, 1925, and John Ciesielski qualified as executor on September 4, 1925.

The undisputed evidence also shows that the deposit was changed from an interest-bearing deposit to a checking deposit. The controversy between the litigants is as to the date on which such change was made.

■ If there is sufficient evidence to support a finding that the change in the deposit was made at a time more than 90 days prior to February 12, 1926, the date on which the bank was closed, appellees were entitled to a decree to the effect that they were entitled to have the amount of such deposit paid out of the guaranty fund.

As we see it, the only material question presented to us is: Was there sufficient evidence to support such finding? After a careful examination of the statement of facts, we have reached the conclusion that there was sufficient evidence to support such finding.

It is true that parts of the testimony of John Ciesielski, as to the date when he ordered the change to be made of the deposit from an interest-bearing one to a simple, unsecured checking account, is inconsistent and conflicting, in some respects, to other parts thereof, but the weight to be given to such testimony as a whole was for the determination of the court trying the case without a jury.

John Ciesielski testified in part that, after his father died in July, 1925, he told the bank official to change the deposit to an open checking account so he could check it out; that such order was given not later than the 10th or 15th of August, 1925; that the officials refused at first to make such change, but, after he got Mr. Shannon, his attorney, to explain to said officials that he was entitled to handle the deposit, the officials agreed to make the change; that, at the time he ordered such change to be made, he had his deceased father's passbook; that, when the change was made, Mr. Renick, one of the officials of the bank, tore up the passbook issued to his father and told him that he had no use for it.

Haynes Shannon, an attorney at law, testified that he represented John Ciesielski, executor of his father's will; that at the request of John he went to the bank in August or the first of September, 1925, and saw Mr. Renick, an official of the bank, and told him to change the deposit from an interest-bearing deposit to a checking account as the "heirs wanted to divide it up without going to court"; that, when he told Mr. Renick to make the change, Renick told him that, if the change was made, the heirs would lose the interest; that, notwithstanding the loss of interest, he ordered the change to be made; that, after he had made the order for such change, to the best of his recollection, he asked the bank officials in the latter part of November, 1925, about the change, and they told him that it was all right; that he told Renick to make the change and to forfeit the interest.

Testifying further, he said as follows: "I first ordered him to change it in the latter part of August or first part of September, and then again after he qualified I asked about it. There was no objection made to it. They didn't inform me that it hadn't been changed. I gave direct instruction that it be changed. I never instructed them as attorney not to change it. When it was in suitable shape he simply went on and checked it out. When I got ready for him to check it out John came to see me about it and we talked about it. That is about the time he started checking it out, that is my best recollection, soon after that. I went to the bank right after Stash's death to have it changed. I think you will see he forfeited the interest for the year. I gave instruction and I thought it was done all the time."

Again he said: "It was under my instructions that the bank agreed to change it. From an interest-bearing time deposit to an open checking deposit. That was in the latter part of August or the first part of September, and I will tell you why it was. John found out it wasn't secured and got scared and that is the reason why it was done."

He also testified that he ordered it changed, and that Renick seemed satisfied to make the change, that he told Renick to forfeit the interest, and that he thinks the bank books would show the interest was forfeited.

Notwithstanding the testimony above mentioned tending to support appellees' contention that the change was made more than 90 days before the bank was closed, and notwithstanding the fact that Mr. Shannon had said he thought the books of the bank, under control of appellant, would show that such change was made as contended by appellees, such books were not produced, nor is it shown that appellant sought to refute the contention of appellees by any one connected with the bank.

■ It was the prerogative of the trial judge, before whom the case was tried without a jury, to weigh the evidence as a whole and give to it such probative force as in his opinion it was entitled to, harmonizing as far as reasonable the conflicting statements of the witnesses.

We are not prepared to hold that the testimony of the witnesses and the circumstances shown were insufficient to support the finding that the change made in the deposit was made more than 90 days before the bank closed. We must therefore affirm the judgment, and it is so ordered.

Affirmed.