**KENTUCKY HOME MUTUAL LIFE IN-SURANCE COMPANY, Appellant,**

v.

**John E. WISE, Appellee.**

**OTIS ELEVATOR COMPANY, Appellant,**

v.

**KENTUCKY HOME MUTUAL LIFE IN-SURANCE COMPANY, Appellee.**

Court of Appeals of Kentucky.

June 23, 1961.

As Modified on Denial of Rehearing

Feb. 22, 1963.

John P. Sandidge, Woodward Hobson & Fulton, Louisville, for Ky. Home Mut. Ins. Co.

Norman A. Curtis, Louisville, for Otis Elevator Co.

Richard C. Oldham, E. A. Sherman, Louisville, for John E. Wise.

MILLIKEN, Judge.

John E. Wise recovered a judgment for $29,582 against Kentucky Home Mutual Life Insurance Company for a back injury received when a passenger elevator in the Kentucky Home Life office building in Louisville fell a short distance with him on July 26, 1955, and the trial court entered a judgment on a directed verdict for Kentucky Home Mutual Life Insurance Company for the same amount against Otis Elevator Company, based upon an elevator maintenance and service contract between the companies. Both judgments have been appealed.

In the circumstances, Wise necessarily relied solely upon the doctrine of res ipsa loquitur as the legal basis of his claim while the two companies attempted to avoid liability, basically, by showing that they were not negligent. Thus brought into sharp focus is the procedural effect of the doctrine of res ipsa loquitur. Before discussing the specific problems presented by these appeals, we believe a summary of the general principles of law involved would be helpful.

There are three ways to treat the procedural effect of that form of circumstantial evidence within the scope of the doctrine of res ipsa loquitur. First, as a permissive inference which would require no directed verdict for the plaintiff in case the defendant failed to offer any evidence in defense. This is the present weight of authority. Second, to treat it as a presumption which would require a directed verdict for the plaintiff in case the defendant offered no evidence in rebuttal. Third, to treat res ipsa loquitur as if it threw the burden of proof entirely over on the defendant to rebut negligence by evidence of greater weight which, in a sense, is closely related to the presumption theory. See Prosser, Law of Torts, 2nd Ed. (1955), pages 211–217. The classic statement of the permissive inference theory was made by Justice Pitney in Sweeney v. Erving in 1913 in 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815, " * * * res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that they furnish circumstantial evidence of negligence where direct evidence of it may be lacking, but it is evidence to be weighed, not necessarily to be accepted as sufficient; that they call for explanation or rebuttal, not necessarily that they require it; that they make a case to be decided by the jury, not that they forestall the verdict. Res ipsa loquitur, where it applies, does not convert the defendant's general issue into an affirmative defense. When all the evidence is in, the question for the jury is, whether the pre-ponderance is with the plaintiff." When we get right down to practicalities, the procedural theory followed by courts in a given case depends largely on "the strength of the inference to be drawn, which will vary with the circumstances of the case." Prosser, above, page 212. In fact, in Vernon v. Gentry, Ky., 334 S.W.2d 266, we said, "In the event the defendant can explain away the presumption so conclusively as to completely overcome it, he is entitled to a directed verdict." With this analysis in mind, let us examine the evidence.

In addition to the operator, who was an employee of Kentucky Mutual Life Insurance Company, Wise and a woman passenger were the only occupants of the elevator when its upward travel halted and it began its descent from about the nineteenth floor. The consensus appears to be that it came to a stop about three feet below the eighteenth floor, a descent of fourteen or fifteen feet. Wise said he heard a strange noise when the elevator started down, that the operator was moving the control handle first one way and then another, that in a few seconds the elevator came to a jarring stop and made "a couple of little, small jars" as it settled into position. He said the resultant force "more or less pushed me down, sort of like an accordion." The operator opened the door, Wise climbed out, reached down and helped the woman passenger out. The operator said the elevator rattled and squeaked when it came to a stop; that he did not realize it was falling, but that the stop caused his knees to buckle. The woman passenger said she noticed no jarring or peculiar noise when the elevator stopped. Neither she nor the operator was injured, and it was not until several days later that Wise began having serious trouble with his back. However, he had told the elevator starter fifteen or twenty minutes after the accident that his back was aching.

In defense of the claim, by attempting to show no negligence on the part of the companies, testimony was offered that the elevator had all the safety devices required by the Elevator Code of the City of Louis-

-ville and met the standard of the American Society of Engineers; that the elevator had a capacity of 2,500 pounds, and had counterweights equal to the weight of the cab plus 40% of its capacity which would have drawn it back to the nineteenth floor with its three person load had not the automatic application of the brakes prevented it. The elevator itself was inspected every week, its safety devices every six months by representatives of Otis Elevator in conformity with their contract, and no defects were visible at the last inspection. In fact, the elevator came to a stop without the safety devices going into action. Evidence was offered that a fuse blew as a result of the grounding of one of the armature coils inside the motor due to a breakdown of the insulation which could not have been discovered by visual inspection except by dismantling the motor at great cost, and possibly could not have been detected even then by visual examination. What caused the break in the insulation was largely speculative.

We do not believe that the evidence negating negligence is so strong that we may say as a matter of law that the jury must accept it—that reasonable men would have to accept it, for the reliability of mechanical safety devices is not absolute as was pointed out in Otis Elevator Company v. Robinson, 5 Cir., 287 F.2d 62 (1961), where the court said: "Of course this is not the first time that something has occurred that simply could not have happened. The more complex becomes our machine age civilization the more this becomes evident. * * * Indeed, it is the likelihood that the 'impossible' will occur which augments the growing business of insurance, engages the professional attention of lawyers * * * and furnishes to us and others the inexhaustible but well-nigh exhausting grist for the judicial mill."

Considering the high degree of care required of the operator of elevators as in the case of other common carriers of passengers, Kentucky Hotel Company v. Camp, 97 Ky. 424, 30 S.W. 1010, and the application of the res ipsa loquitur doctrine in such cases, 56 A.L.R.2d 1059–1089, Wise's testimony about the jarring stop and the strange noise, confirmed in part by the operator of the elevator, is sufficient for the jury to find negligence if it cares to do so. The defense contention that the elevator did not "fall," that it did not come to a sudden jarring stop because it could not on account of the counterweight and short distance traveled, does not preclude the jury from believing that the elevator did come to a sudden jarring stop, that the elevator did make a peculiar noise, and that the whole truth has not been told. The case is one for a jury to decide under proper instructions.

The instructions given were not correct, and we must reverse the case for that reason. The instruction given by the trial court was in pertinent part:

"If you believe from the evidence that the elevator on which John E. Wise, the plaintiff was a passenger fell suddenly and abruptly and that plaintiff was thereby injured, then you will find for the plaintiff against the defendant Kentucky Home Mutual Life Insurance Company * * *."

This instruction made the Kentucky Home Mutual Life Insurance Company tantamount to an insurer in case the jury believed the elevator "fell suddenly and abruptly," which is much more than the high degree of care required of a common carrier where liability is premised on negligence and avoided if the elevator fell through no fault of the defendant. In fact, the instruction did not submit the issue of negligence at all. An instruction adapted from Stanley's Kentucky Instructions to Juries, Vol. 1, Sec. 252, page 399, sets forth the proper standard.

Since it is necessary to set aside the judgments, the complaint about the amount of damages awarded is not a matter for us to consider in this opinion because

the evidence offered on a retrial may not be the same. Louisville & N. R. Company v. Mattingly, Ky., 318 S.W.2d 844 and 339 S.W.2d 155.

■■ When Wise obtained his verdict against the Kentucky Home Mutual Life Insurance Company, the trial court directed a verdict against Otis Elevator Company in the third party action brought against it by Kentucky Home Mutual Life Insurance Company on the maintenance and servicing contract, premised on the theory that Otis Elevator was an indemnitor by way of the contract against any liability incurred by Kentucky Home Mutual Life Insurance Company in the normal operation of its elevators. Since we are reversing Wise's judgment, it follows that the judgment against Otis Elevator must be reversed. However, we point out that the standard of care required of Otis Elevator by the terms of the contract is "reasonable care" and not the high degree of care required of a common carrier. Other provisions of the contract further reveal that it was improper to direct a judgment against Otis on the theory that it is an indemnitor under the contract for any liability incurred by Kentucky Home Mutual Life Insurance Company by reason of the operation of the elevator. The only jury question as to Otis is whether it used reasonable care in the fulfillment of its contract.

The judgments are reversed.