**Edna Self GARRETT, Appellant,**

v.

**AMERICAN AIRLINES, INC., Appellee.**

**No. 20423.**

United States Court of Appeals
Fifth Circuit.

June 5, 1964.

---

W. S. Barron, Jr., Dallas, Tex., for appellant.

W. B. Patterson, Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for appellee.

Before BROWN, WISDOM and BELL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

The question in this case is whether an air carrier must anticipate the likelihood that the manner in which its passengers handle, or mishandle, hand baggage will cause injury to a fellow traveler. The District Court by its instructed verdict for the carrier at the close of the passenger's case ruled in the negative. We disagree and reverse.

The facts are simple and brief. The passenger, a mature woman, had booked passage from Dallas to Los Angeles on a Jet due to depart Love Field 3:15 a. m. The flight was running late and there were the usual changes in expected arrival time. The plane finally arrived about 4:00 a. m., but the plaintiff passenger was not on the flight when it eventually departed at 4:40 a. m. Without ever leaving the ground, she was severely injured while standing in line in the departure lounge. Her undoing was not brought about by the failure of any intricate mechanism of the jet age, cf. Otis Elevator Co. v. Robinson, 5 Cir., 1961, 287 F.2d 62, 63. Rather, it was a small zipper "ditty" bag which an unidentified fellow passenger-in-waiting just back of her had put on the floor. The case turns on whether the carrier had reason to expect passengers would rest hand luggage on the floor, and if so, whether they should anticipate the possibility of harm.

■ The accident occurred in a small, 30 x 40 feet enclosed lounge area under lease to the carrier in the Love Field terminal. The capacity of the lounge was in the neighborhood of 50 and the agent in charge estimated that there were some 35 passengers present. He described the phenomenon now so common. When the plane finally arrived, the patient or impatient, hopeful passengers started moving toward the gateway door. This put the people close together with other persons in front and back and alongside of most. Experiencing a sort of despair that air travelers would not generally heed the request to remain seated until the flight was called for boarding, he characterized the situation as one in which "you will have the effect of a crowd." About this time the agent left the lounge, went out to the plane, and then returned to his ticket desk inside

942

the lounge. There being no immediate announcement for boarding, the waiting travelers apparently assumed there was to be some more delay and the "crowd" instinctively started moving backwards away from the gateway door. In stepping backwards as a part of this moving group,[1] the plaintiff's foot came down on the small zipper bag then resting on the floor. This caused her to lose her balance and fall suddenly to the floor causing, among other things, a broken hip.

■■ This simple case is here because the carrier totally misapprehended the nature of its duty. Approaching it as a "banana peel"-in-the-aisle case, it was successful in persuading the trial court that it had no liability unless (a) the carrier put the zipper bag on the floor, or (b) the carrier knew it was on the floor, or (c) it had been there so long that the carrier was charged with knowledge of its presence and a consequent duty to remove it. It was totally indifferent to a fourth basis of liability and one, incidentally, which is recognized even in the grocery store slip-and-fall cases. See Pogue v. Great Atlantic & Pacific Tea Co., 5 Cir., 1957, 242 F.2d 575; Food Fair Stores, Inc. v. Trussell, Fla.Sup.Ct., 1961, 131 So.2d 730. It is that a carrier must reasonably take cognizance of the habits, customs, and practices followed generally by its passengers insofar as these actions present hazards to its business invitees, and with an awareness of these hazards, it must take reasonably appropriate steps to avoid or minimize likely harm. Indeed, in the

Texas approach, it is precisely this element of anticipation of common practice and likelihood of harm which distinguishes cases of carrier liability, Houston Electric Co. v. Bragg, Tex.Com.App., 1926, 276 S.W. 641, 280 S.W. 188; Fuller v. Southwest Greyhound Lines, Inc., Tex.Civ.App., 1960, error refused n. r. e., 331 S.W.2d 455, from those of nonliability.[2] Airline Motor Coaches v. Caver, 1950, 148 Tex. 521, 226 S.W.2d 830.

■■ Once that standard[3] of care is recognized, it is plain that there was sufficient evidence to warrant a favorable jury finding. The air carrier agent categorically acknowledged that most air travelers today carry hand baggage, such as briefcases, zipper cases, attache cases, overnight cases, or the like. He also acknowledged that frequently passengers standing or slowly shuffling along in line for boarding put these pieces of hand baggage on the floor alongside or immediately in front of their feet. Despite this, no steps were taken by the carrier toward either prohibiting this practice or warning those travelers who, from inexperience or other causes, might be unaware of the practices or the dangers of it.

Clearly the jury could conclude that the carrier had to take cognizance of this practice of waiting passengers. We think also that there was adequate basis to support the inference that there was a likelihood of harm, that is that the danger should have been foreseen. It would warrant the inference also that the failure to take appropriate steps was a

1. The Court declined to permit the passenger plaintiff to testify that she was forced to move backward because of the movement of the crowd. For the bill of exceptions it was stipulated that she would have testified that "she was required by the movement of the people in front of her to step backwards when she did" because of the movement of the crowd. Exclusion of the testimony is not presented as a specific error, but we have properly taken this stipulated testimony into account since it was immediately relevant, probative and not subject to the asserted objection of it being a "conclusion." She moved. She either did it

voluntarily or because the movement of others in front of her made it necessary for her to move. She knew why she moved. This was a fact, not a conclusion.

2. Cases involving an isolated piece of luggage in an aisle, such as in Gulf C & S Ry. v. Blackmon, Tex.Civ.App., error refused, 1932, 56 S.W.2d 199; and Stimson v. Milwaukee, L. S. & W. R. R., 1890, 75 Wis. 381, 44 N.W. 748; 19 A. L.R. 1372 (1922), 74 A.L.R.2d 1336 (1960) are, of course, quite different.

3. The principles expressed here are not in conflict with J. C. Penney Co. v. Norris, 5 Cir., 1958, 250 F.2d 385.

breach of duty proximately causing the injury.

The carrier urges that the passenger did not prove any negligence. If by that is meant that there was no expert testimony that this situation presented the reasonable prospect of hazard, the criticism is well founded. Likewise, the carrier urges, there was no specific proof that this kind of accident had happened before. But this was hardly the sort of case beyond the competence of the average juror requiring expert testimony. Cf. Pure Oil Co. v. Snipes, 5 Cir., 1961, 293 F.2d 60, 71, 1961 AMC 1651; June T., Inc. v. King, 5 Cir., 1961, 290 F.2d 404, 1961 AMC 1431, quoted with approval in Salem v. United States Lines, 1962, 370 U.S. 31, 37 n. 6, 82 S.Ct. 1119, 8 L.Ed.2d 313, 1962 AMC 1461. And the mechanism of the accident itself is hardly of that weird or unusual kind which would give the tort-feasor a free ride for the first occurrence, an immunity which seldom, if ever, is available. Texas & P. Ry. v. Carlin, 5 Cir., 1901, 111 F. 777, 781, aff'd, 1903, 189 U.S. 354, 23 S.Ct. 585, 47 L.Ed. 849; Johnson v. Kosmos Portland Cement Co., 6 Cir., 1933, 64 F.2d 193, 196, 1933 AMC 1023; Greyhound Corp. v. Wilson, 5 Cir., 1958, 250 F.2d 509, 512 n. 4.

To sustain a directed verdict, we would have to say that no reasonable men "in an impartial exercise of their judgment," Swift & Co. v. Morgan & Sturdivant, 5 Cir., 1954, 214 F.2d 115, 116; Turner v. Atlantic Coastline R.R., 5 Cir., 1961, 292 F.2d 586, 587, could conclude that the carrier should have been aware of the practice and, being aware, should have been conscious of likely dangers. That covers a wide territory and includes within the category of "reasonable men" peripatetic judges whose work makes them frequent air travelers. For the limited purpose of this negative inquiry—no reasonable man, etc.—all mankind, including judges, unavoidably witness to their common or frequent experiences. Since the application of this standard of review necessarily places judges, in their everyday human experiences, in the position of witnesses to the nature of mankind, Greyhound Corp. v. Wilson, 5 Cir., 1958, 250 F.2d 509, 513, we certainly have to state that we would be surprised if the law were to declare that no reasonable man could say that a carrier had an obligation to anticipate facts occurring which are in the common contemporary experience of mankind. And, of course, a jury reasonably could think that hand baggage of assorted size, shape, and weight on the floor alongside, or in front of, a group of passengers loosely lined up several abreast might cause people to stumble, lose their balance, trip or fall as the undulating "crowd" of people slowly move forward or backward in the course of beginning, or making, or concluding air travel. Brown v. American Airlines, Inc., 5 Cir., 1957, 244 F.2d 128. Indeed, a jury might well say, as the plaintiff says the agent said, "This is why I tell people not to put their bags on the floor."

Although it acknowledges that there is no record indication that the trial judge based the instructed verdict on the contention, the carrier nevertheless presses for affirmance on the ground that the passenger's own conduct was contributory negligence as a matter of law or, related to it, if the hazard was there, it was so open and obvious that the carrier had no duty to warn or protect against it. As to this, we simply state that, whatever might be the ultimate decision when the facts are fully developed and appropriately found, the recent exhaustive opinion of Justice Greenhill for the Supreme Court in Halepeska v. Callihan Interests, Inc., 1963, Tex., 371 S.W.2d 368, demonstrates that the nuances of the Texas "no duty," "volenti" and "contributory negligence" doctrines are too subtle to resolve at this stage.

Considering the Texas policy of holding a public carrier to the "duty to exercise such a high degree of foresight as to possible dangers and such a high degree of prudence in guarding against them as would be used by a very cautious, prudent and competent" person under

**944**

similar circumstances,[4] during the entire relationship of passenger-carrier, including necessary time spent on station premises,[5] we conclude that on the plaintiff's case there was sufficient evidence to require a jury submission. The case must therefore be reversed and remanded for a new trial and further consistent proceedings. In taking this action we think it appropriate to sound a caveat. We do not intend to predict now what the outcome of the retrial should or may be. All we hold is that the evidence on this trial raises this issue. It is futile to anticipate what the evidence may be on retrial. It is almost certain to be different, and its sufficiency inevitably is a matter for initial determination by the trial Judge applying the principles here laid down but without any artificial effort to match the evidence, bit by bit, against that contained in the present record. Duke v. Sun Oil Co., 5 Cir., 1963, 320 F.2d 853; Smoot v. State Farm Mut. Auto. Ins. Co., 5 Cir., 1962, 299 F.2d 525, 534; Gulf Oil Corp. v. Wright, 5 Cir., 1956, 236 F.2d 46, 53; cf. Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, 693.

Reversed and remanded.

---

4. Hill v. Texas, N. M. & Okla. Coaches, 1954, 153 Tex. 581, 272 S.W.2d 91.

5. Fort Worth & D C. Ry. Co. v. Tidwell, 1922, 112 Tex. 89, 245 S.W. 667, 670.