**Charles M. LECKBEE, Appellant,**

v.

**CONTINENTAL AIRLINES, INC.,**
Appellee.

No. 26265.

United States Court of Appeals
Fifth Circuit.

May 5, 1969.

**1192**

Bob Hoblit, Warren Burnett, Odessa, Tex., for appellant.

Perry Davis, Jr., Ray Stoker, Jr., Shafer, Gilliland, Davis, Bunton & Mc-Collum, Odessa, Tex., for appellee.

Before TUTTLE and GEWIN, Circuit Judges, and PITTMAN, District Judge.

GEWIN, Circuit Judge:

The *sudden jerk* which has plagued carriers engaged in surface transportation for years now forms the basis of a complaint against an air carrier. By an action in the United States District Court for the Western District of Texas, Charles Leckbee seeks to recover damages from Continental Airlines for personal injuries allegedly inflicted upon him by the abrupt and unexpected movement of Continental's commercial airliner on which he was a passenger. The case was heard by a jury, but the issues never reached the jurors. After both parties had presented their evidence and rested, the court directed a verdict in favor of Continental, expressing the view that there was no evidence from which the jury could find that Leckbee suffered an injury *proximately caused* by Continental's negligence. We disagree with this assessment of the evidence and reverse.

The suit arose from an incident which occurred on December 12, 1966, as Continental's four-engine, turbo-prop aircraft commenced its takeoff from the Greater Southwest Airport in Fort Worth, Texas. As the plane sped along the runway approaching the point of lift-off, the captain's adjustable seat unexpectedly slid backwards projecting him away from the instrument panel and controls. This malfunction of the seat prompted the captain to abort the takeoff by immediately retarding the throttles and executing a maneuver characterized as "ground fine," whereby movement of the aircraft was slowed and the plane eventually brought to a full stop. Appellant Leckbee alleges in his complaint that the deceleration was so abrupt that it threw him across his seat belt, causing injury to the bones, nerves, and soft tissue of his back. At the trial, his ac-

count of the incident was, in pertinent part as follows:

I had my seat belt on and the acceleration pushed me back into the seat. Everything was apparently normal and the first thing I knew, why this thing —bingo, she stopped, not necessarily like hitting a brick wall, but just reversed the thrust, and I found myself leaning over the seat belt and I tried to catch myself using my back muscles et cetera, and I guess I put my hand up in front of me and they slowed the plane down and it eventually turned off. I didn't know what had happened.

Q. Did you have any kind of a warning whatsoever that the plane wasn't going to take off normally until this abortive take-off occurred?

A. No warning whatsoever.

Q. Did you feel any kind of sensation in any part of your body that was out of the ordinary when that occurred, when the airplane deaccelerated?

A. Well, I felt a little pull, a twing or twang, something or another back in the back. I didn't think too much about it at the time.

About two months prior to this incident, Leckbee had undergone a surgical operation for the removal of a herniated disc in the lower region of his back. The neurosurgeon who performed the operation, Dr. Meek, testified that his last examination of Leckbee *before* the aborted takeoff was on November 8, 1966, slightly over a month before this occurrence, and on that date Leckbee reported no back pain and complained of only slight pain in his left leg. Leckbee testified that at the time he boarded the plane on December 12, he had no pain in any part of his body, but that on the day following the aborted takeoff, he experienced discomfort in his left leg and hip which progressively worsened. On December 23, 1966, Leckbee returned to Dr. Meek complaining of severe leg and hip pain. When a period of bed rest failed to produce relief from this condition, a second surgical procedure was performed February 6, 1967, at which time more herniated disc was removed from Leckbee's back. Dr. Meek testified that an abrupt movement like the one described by Leckbee as having occurred at the time of the aborted takeoff could lead to the condition which required Leckbee's second surgical operation and that, assuming no other injury to Leckbee's back, he believed "there would be a relationship between such an incident and the subsequent development of his symptoms and physical condition."

The district court viewed the evidence as adequately presenting for jury consideration the question of whether Continental had acted negligently in permitting the captain's seat to malfunction, but concluded that the evidence was insufficient to establish proximate causation linking Leckbee's injury with the malfunction. On appeal the parties have not seriously challenged the district court's evaluation of the evidence relating to Continental's *negligence* and, after examining the record, we concur in this aspect of the court's analysis. In our opinion there was sufficient evidence of probative force to support a finding of negligence. However, we are unable to agree with the district court that the evidence was insufficient to raise a jury question on the matter of *proximate cause*.

The concept of proximate cause as fashioned by Texas jurisprudence has two basic elements: cause in fact and foreseeability.[1] *Cause in fact* requires evidence that the negligent act was a substantial factor in bringing about the injury and that but for the negligent act no

---

1. Texas & Pac. Ry. Co. v. McCleery, 418 S.W.2d 494, 496 (Tex.1967); Baumler v. Hazelwood, 162 Tex. 361, 347 S.W.2d 560, 564 (Tex.1961); Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W. 2d 352, 355 (1951). Jurisdiction in this case is based upon diversity of citizenship and, therefore, state law is controlling as to the elements of the cause of action.

harm would have been incurred.[2] Viewing the evidence in a light most favorable to Leckbee, we are unable to say that reasonable and fair-minded men in the exercise of impartial judgment could not find these requirements fulfilled and conclude that the aborted takeoff of Continental's aircraft was the *cause in fact* of Leckbee's subsequent decline in health.[3] The evidence is clearly susceptible of such a finding once the jury gives credence to the following: (1) Leckbee's testimony that the unexpected deceleration threw him forward, instantly causing pain in his left leg and hip; (2) testimony describing the deceleration as sufficiently abrupt to cause a handbag or purse to slide up the aisle; (3) testimony contrasting Leckbee's physical condition before and after the aborted takeoff; and (4) medical testimony relating the abrupt movement of the aircraft to Leckbee's injury.[4]

■ Continental would avoid the result we reach by its contention that the *deceleration* of the plane was not an act of negligence. It is true that there was no evidence of the captain's having acted negligently in aborting the takeoff. Common sense suggests that under the circumstances he exercised good judgment. Nevertheless, the prudence of Continental's pilot in aborting the takeoff cannot be invoked to absolve the carrier from liability if the emergency necessitating the abortion was created by Continental's negligence, *i. e.*, permitting the captain's seat to malfunction. As stated by the Texas court,

> [t]he issue as to responsibility is in * * * circumstances [of emergency] to be resolved by reference to the act or omission which brought the dangerous situation into existence.[5]

■ *Foreseeability*, the second element in the makeup of proximate cause, requires that

> [a]s a person of ordinary intelligence and prudence, . . . [the actor] should have anticipated the danger to others created by his negligent act, and the rule does not require that he anticipate just how injuries will grow out of that dangerous situation.[6]

2. Texas & Pac. Ry. Co. v. McCleery, 418 S.W.2d 494, 497 (Tex.1967); Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W. 2d 352, 355 (Tex.1951).

3. Whether the evidence was sufficient for jury submission is measured by federal standards. Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969); North River Ins. Co. v. Hubbard, 391 F.2d 863, 864 (5th Cir. 1968); Cater v. Gordon Transp., Inc., 390 F.2d 44, 46 (5th Cir. 1968).

4. Continental contends that the testimony of Dr. Meek lacks probative force because the witness did not speak in terms of reasonable medical *probabilities*. The Texas Supreme Court has held that
> when the burden of proof is on the plaintiff to show that the injury was negligently caused by defendant, it is not enough to show the injury, together with the expert opinion that it might have occurred from negligence and many other causes. Such evidence has no tendency to show that negligence did cause the injury.

Bowles v. Bourdon, 148 Tex. 1, 219 S.W. 2d 779, 785, 13 A.L.R.2d 1 (1949). We believe that Dr. Meek's testimony, taken as a whole, embraced more than mere possibilities and, in combination with the other evidence, provided the jury with proof from which it could ascertain causation with reasonable certainty. "Reasonable probability . . . is determined by consideration of the substance of the testimony of the expert witness and does not turn on semantics or on the use by the witness of any paricular term or phrase." Insurance Co. of North America v. Myers, 411 S.W.2d 710, 713 (Tex. 1966).

5. Dallas Ry. & Terminal Co. v. Young, 155 S.W.2d 414, 417 (Tex.Civ.App.1941); *see* Gulf, C. & S. F. Ry. Co. v. Baldwin, 2 S.W.2d 520, 522–523 (Tex.Civ.App. 1928).

6. Sullivan v. Flores, 134 Tex. 55, 132 S.W.2d 110, 111 (1939); *see* Biggers v. Continental Bus System, 157 Tex. 351, 298 S.W.2d 79, 303 S.W.2d 359, 365 (Tex.1957); Garrett v. American Airlines, Inc., 332 F.2d 939, 3 A.L.R.3d 930 (5th Cir. 1964).

We have no difficulty concluding that a jury might justifiably find from the evidence that Continental's employees [7] should have reasonably foreseen the danger to passengers created by a failure adequately to adjust or properly to inspect the captain's seat, since a malfunction of the seat might deprive the pilot of access to the controls of the swift and mammoth machine he operates.

The judgment directed by the district court is reversed and the case is remanded for a new trial.[8]

Reversed and remanded.

7. There was evidence indicating that the malfunction could have resulted from either the captain's failure properly to adjust his seat or a broken pen under the seat.

8. Another trial would likely not be necessary had the district court chosen, in the interest of judicial expediency, to reserve decision on the motion for directed verdict as permitted by Rule 50(b), Fed.R. Civ.P.