**OTIS ELEVATOR COMPANY,**
Appellant,

v.

**Katherine TUERR, et al., Appellees.**

**No. 89–CV–542.**

District of Columbia Court of Appeals.

Argued Nov. 1, 1990.
Decided Nov. 30, 1992.

---

Daniel Karp with whom D'Ana E. Johnson, Washington, D.C., was on the brief, for appellant.

Thomas A. Mauro, Washington, D.C., was on the brief, for appellees.

Before FARRELL and WAGNER, Associate Judges, and NEWMAN, Senior Judge.*

WAGNER, Associate Judge:

Appellee, Katherine Tuerr, was injured in an elevator accident. She filed a complaint for negligence against appellant, Otis Elevator Company (Otis), which was responsible for maintenance of the elevator, seeking $500,000 in compensatory damages. Mrs. Tuerr's husband, Alfred Tuerr, joined in the action and sought damages in the amount of $200,000 for loss of consortium. The jury returned a verdict for Mrs. Tuerr in the amount of $650,000 and for

---

* Judge Newman was an Associate Judge of the court at the time of argument.

Mr. Tuerr in the amount of $150,000.[1] The trial court denied Otis' Motion for Judgment Notwithstanding the Verdict (N.O.V.) or Alternatively for New Trial. Otis raises four principal issues on appeal: (1) that the trial court erred in allowing Donald Moynihan, appellee's expert witness on elevator maintenance, to testify; (2) that appellee failed to establish negligence or proximate cause; (3) that the issue of future losses was submitted improperly to the jury without an adequate foundation; and (4) that the trial court abused its discretion in denying Otis' motion for a new trial based on the excessiveness of the verdict and in granting appellee's motion to increase the ad damnum. We affirm.

## I.

On August 20, 1986, appellee, Katherine Tuerr, was a passenger on an elevator at the National Geographic Society Building where she worked. The elevator accelerated suddenly before coming to an abrupt, jolting stop as a result of which Mrs. Tuerr's feet left the floor, and she hit her back and knee on the elevator railing. On August 4, 1986, another passenger on that same elevator, Miriam Miller, experienced a sudden acceleration and an abrupt stop. This stop occurred when the safety mechanism engaged, causing the elevator cables to jump out of their grooves. The passenger had to be freed from the elevator by an Otis employee. Otis put the cables back in the grooves and returned the elevator to service. Elevator accidents are required to be reported to the Director of the Department of Consumer and Regulatory Affairs pursuant to 13A DCMR § 113.1. Government officials must investigate before any broken or damaged part of the elevator is removed. *Id.* § 113.2. The elevator unit is not to be placed back in service until after investigation, satisfactory repairs, and reinspection. *Id.* § 113.3. Otis did not report the accident of August 4 to the proper authorities.

Appellees relied primarily on the testimony of Donald Moynihan to establish liability. Mr. Moynihan testified that after the accident on August 4, 1986, Otis should have inspected and tested the equipment until it found the problem and that if it had done so, the August 20, 1986 accident could have been prevented. He compared the situation with having the brakes fail on an automobile: until you ascertain and correct the problem, you cannot continue to drive the vehicle safely. On August 4, the safety set and the "ropes jumped the sleeve" and the elevator shut down, which the expert attributed to a violent stop. Mr. Moynihan testified that he found no fault with Otis for this earlier incident; however, in his opinion, the same thing happened again on August 20th, causing the safety to set, followed by a sudden jolt.

## II.

 Appellant argues that reversal is required because the trial court erred in allowing appellees' witness, Donald Moynihan, to testify as an expert witness. Appellant contends that he did not possess the requisite experience to qualify as an expert in the area of elevator maintenance. We disagree. Whether a witness possesses the requisite qualifications to express an opinion on a particular subject is within the trial court's discretion, and its decision in that regard will only be reversed for an abuse. *Dyas v. United States*, 376 A.2d 827, 832 (D.C.1977), *cert. denied*, 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977); *Waggaman v. Forstmann*, 217 A.2d 310, 311 (D.C.1966). In order to qualify as an expert witness and render an opinion, " 'the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.' " *Dyas*, 376 A.2d at 832 (quoting E. CLEARY, McCORMICK ON EVIDENCE, § 13 at 29–31 (2d ed. 1972)).

 The trial court accepted Moynihan's qualifications to testify as an expert in the

---

**1.** Appellant's motion to reduce Mrs. Tuerr's award to the amend the complaint to increase

the ad damnum, and the trial court granted it.

field of elevator maintenance, "how elevators work," elevator codes and their interpretation, the standard of care for elevators, and elevator maintenance contracts. The evidence was more than sufficient to support the trial court's determination that the witness was qualified as an expert in the areas for which the court accepted him. The evidence showed that Mr. Moynihan is a self-employed elevator consultant who holds a bachelor of science degree in electrical engineering. He had been an engineer for Otis from 1948 until 1955 where he worked on designs and electrical systems which control elevators. In 1955 he went to work for a smaller elevator company which assembled and installed elevators. In 1961 he started working for the Dover Corporation, which was at the time of trial the second largest elevator company in the United States. While with Dover, he was vice president in charge of engineering and had 100 engineers working under him. He was involved in the redesign of all equipment. Mr. Moynihan designed the first gearless dumb-waiter, according to his testimony. In 1961, he became a member of ANSI Codes, an invitation only organization, which issues a national elevator code which is used in the District of Columbia. As a member, he became a part of the code committee which writes it. His work has included the evaluation of the safety of elevators. At the time of trial, he was involved in examining elevators for code compliance and for a determination of what, if any, changes should be made to them. He had qualified in court as an expert witness between twelve to sixteen times, three times in the District of Columbia. Although he did not engage in actual repairs, he directed them, and he monitored maintenance contracts. This evidence was more than adequate to establish Mr. Moynihan's qualifications as an expert witness in the fields in which he qualified. Accordingly, we find no abuse of discretion in the trial court's decision to accept him as such. See Waggaman, supra, 217 A.2d at 311.

### III.

Appellant's second argument for reversal is more substantial, for essentially it is that appellees failed to establish liability. In order to establish negligence, a plaintiff has the burden of proof on the applicable standard of care, that the defendant deviated from that standard, and that there was a causal relation between the deviation and plaintiff's injury. *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C.1988); *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C.1987). Specifically, appellant contends that Moynihan's testimony was insufficient to meet appellees' burden in that he testified only about what he would have done under the circumstances, rather than what was required by the accepted standards of the industry. *See Bell v. Jones*, 523 A.2d 982, 989 (D.C.1986) (expert's testimony of what he or she would do under similar circumstances insufficient to prove standard of care); *see also Toy*, 549 A.2d at 7 (where expert testimony required, expert's opinion of what he or she would do insufficient). A plaintiff must present testimony to establish the standard of care and any deviation from it when these subjects are beyond the common knowledge and experience of the average lay person. *Toy*, 549 A.2d at 6; *see Meek v. Shepard*, 484 A.2d 579, 581 n. 4 (D.C.1984).

Appellees do not identify in the testimony of their expert witness evidence of the relevant industry standard of care. Rather, they rely upon the duty of one maintaining an elevator to exercise reasonable care for the safety of the passengers. *See Otis Elevator Co. v. Robinson*, 287 F.2d 62, 65 (5th Cir.1961). In *Robinson*, the Fifth Circuit, applying the law of the state of Texas in a negligence action against Otis, found liability where the evidence showed that another person experienced a prior, similar accident in the same elevator, and a similar accident occurred in a second elevator in the building which was maintained by Otis. *Id.* at 65. After each accident report, an Otis service person failed to discover the problem, and Otis made no repairs. *Id.* The court found that under Texas law a reasonable person could draw an inference of negligence from the circumstantial evidence of the falling of the elevator and the repeated occurrences of the incidents with-

out Otis effecting repairs. *Id.* This circumstantial evidence, the court concluded, showed Otis' failure to exercise ordinary care.

Similarly, a Pennsylvania court has held that evidence of the customary practices of the industry is not essential to a finding of negligence in an action for personal injuries arising out of an elevator accident. *Dallas v. F.M. Oxford Inc.*, 381 Pa.Super. 89, 552 A.2d 1109, 1112-13 (1989). In *Dallas,* the court held that the issue of which safeguards should have been used in maintaining a safe elevator was properly for resolution by the jury. *Id.* 552 A.2d at 1113. The court was persuaded that the evidence was sufficient to allow the jury to infer negligence where the evidence showed that the defendant failed to include a certain safety device on the elevator. *Id.*

■ In this jurisdiction we have upheld the submission of the negligence issue to the jury in an elevator case applying the theory of *res ipsa loquitur. See Otis Elevator Co. v. Henderson,* 514 A.2d 784, 785–86 (D.C.1986). The doctrine applies where

> (1) [t]he event [is] of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the control (exclusive or joint) of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Id.* at 785 (quoting *Bell v. Westinghouse Elec. Corp.,* 483 A.2d 324, 329 (D.C.1984)). The doctrine allows the jury to infer a lack of due care on the mere happening of the accident. *Henderson,* 514 A.2d at 785. A plaintiff relying on the doctrine "must demonstrate that the injury ordinarily does not occur when due care is exercised." *Marshall v. Townsend,* 464 A.2d 144, 145 (D.C. 1983) (citations omitted). In *Henderson,* the accident occurred when the elevator door closed on the plaintiff without retracting immediately. *Henderson,* 514 A.2d at 785. The court held that it was reasonable to infer that something was wrong with either "the elevator's dwell time or the right door's safety edge, or both." *Id.* Henderson was not able to identify the

specific mechanical failure which caused the accident. *Id.* This court has held similarly that the doctrine of *res ipsa loquitur* can apply to establish negligence where the plaintiff testified that she rode three quarters of the way down an escalator, felt something tugging on her shoe, and fell when she attempted to pull free. *Bell v. Westinghouse Elec. Corp.,* 483 A.2d at 329. Bell so testified and offered into evidence the heel of her damaged sandal, and this court found this evidence sufficient to support a *res ipsa loquitur* instruction. *Id.; see also Washington Sheraton Corp. v. Keeter,* 239 A.2d 620, 622 (D.C.1968).

■ Appellant correctly points out that Mr. Moynihan failed to testify precisely what the standard of care is for a reasonably prudent elevator maintenance company. That does not end our inquiry on the issue. The expert expressed other opinions which are relevant to an evaluation of the sufficiency of the evidence to support liability consistent with the principles discussed in the preceding paragraphs. Moynihan testified that the two elevator accidents were related and that the problem recurred without Otis finding the problem and correcting it before putting the elevator back in service. Indeed, Otis failed to comply with local reporting regulations which required investigation and repair before the elevator was returned to service. 13A DCMR §§ 113.1–113.3. While much of his testimony about what should have been done was couched in terms of the first person, Moynihan's responses were in answer to an initial question about whether or not he had an opinion "to a reasonable engineering certainty, as to whether Otis exercised reasonable due care in maintaining this elevator during [the relevant] period of time." The witness responded that he did have such an opinion, but when asked to express it, he frequently prefaced his remarks with "I." Of course, it is insufficient for an expert witness to testify about only what he would do under similar circumstances. *Bell v. Jones, supra,* 523 A.2d at 989; *Meek, supra,* 484 A.2d at 581. However, when the substance of the testimony along with the initial questioning indicates the witness is about to express an

opinion to a reasonable degree of engineering certainty, it is sufficient on the whole to support the expert opinion. *See Bell v. Jones,* 523 A.2d at 989. Thus, Moynihan's expert opinion that appellant failed to exercise due care in returning the elevator to service after the first accident, before investigating and discovering the reason for the malfunction which precipitated the second accident, provided adequate proof of negligence.

There is also additional evidence of negligence in the record. Appellees offered the testimony of David Walker, the manager of the elevator inspection section of the Department of Consumer and Regulatory Affairs for the District of Columbia. He testified that Otis failed to file any reports on the two accidents although it was required to do so under the applicable elevator code. *See* 13A DCMR §§ 113.1–113.3. Walker testified that the purpose of the regulation is to maintain elevator safety for the public and that it is the responsibility of the building's owner, agent, or the elevator maintenance company to file the report. *See id.* § 113.1 ("the operator in charge of the installation, or the superintendent or manager" shall notify the department).

■ When a particular regulatory or statutory requirement is enacted to prevent the type of accident which occurred here, the unexplained violation of that regulation will render a defendant liable as a matter of law if a plaintiff can establish that he or she is within the ambit of the statute. *Lewis v. Washington Metropolitan Area Transit Authority,* 463 A.2d 666, 674 (D.C. 1983). The party relying on the standard must establish its applicability, that he or she is within those persons intended to be protected by it, and that injury resulted from the risk against which the statute was designed to protect. *Id.* at 674. As a regular user of the elevator, Ms. Tuerr was clearly within the purview of those sought to be protected by a regulation requiring reporting, investigation, correction, and in-

spection by the government before defective elevators are returned to service. When considered with Moynihan's testimony that the two accidents were related, the conclusion is inescapable that the second accident was the type of situation against which the regulation was promulgated to guard. Evidence of Otis' violation of the regulation without more is sufficient to establish a prima facie case of negligence. *See id.*

■ In summary, we conclude on appellant's liability challenge that an elevator maintenance contractor owes at least a duty to exercise reasonable care to those who ride on the elevator. *Otis Elevator Co. v. Robinson, supra,* 287 F.2d at 63; *see also Otis Elevator Co. v. Embert,* 198 Md. 585, 84 A.2d 876, 882–83 (1951); *O'Neill & Co. v. Crummitt,* 172 Md. 53, 190 A. 763, 766 (1937). Appellees' proof of deviation from this standard was adequate to meet their burden based on the testimony of Moynihan and Walker. Moreover, the doctrine of *res ipsa loquitur* applies in this case and affords a sufficient basis for the jury to find negligence.[2] *Henderson, supra,* 514 A.2d at 785; *Bell v. Westinghouse Elec., Co. supra,* 483 A.2d at 329. A lay person can infer from the evidence presented in this case that the company's failure to correct fully a malfunction in the elevator which came to its attention on August 4th and recurred on August 20th was negligence. *Otis Elevator Co. v. Robinson, supra,* 287 F.2d at 65–66. Accordingly, we reject appellant's contention that appellees failed to establish Otis' negligence.[3]

Appellant argues that even if Otis was negligent, appellees failed to establish that Otis' negligence was the proximate cause of the accident on August 20th. Otis bases its argument on the fact that appellees' witness could not establish precisely what malfunction caused the accidents. He could only identify a number of reasons such events would occur. However, he

---

2. The trial court, over appellant's objection, properly instructed the jury on *res ipsa loquitur.*

3. We also reject appellant's argument that the admission of expert testimony was prejudicial

since it was not beyond the ken of the average lay person. Some of the opinions of the expert were clearly admissible, and therefore there was no prejudice to appellant in this case.

opined that it was the failure of Otis to identify the cause and cure the problem after the first accident which was negligent and which proximately caused appellee to be exposed to foreseeable danger. Where the precise cause of the accident was not known, it was more likely within the ability of Otis to ascertain. *See Otis Elevator Co. v. Robinson, supra,* 287 F.2d at 65. To have an accident occur within such a short period of time without the company responsible for maintaining the elevator correcting the situation is sufficient to show negligence. *Id.* As a matter of circumstantial evidence and upon application of the *res ipsa loquitur* doctrine, consistent with the precedents discussed above, the evidence was more than sufficient to permit a finding of negligence.

### IV.

■ Appellant contends that the substantial award in this case necessarily represented future lost wages and future nonmedical expenses. It argues that the trial court erred in permitting the economist to project future lost wages for Mrs. Tuerr because she failed to prove that she would suffer a diminution of wages or need the assistance of a domestic helper in the future as a result of the accident. "The rule is that recovery of damages based on future consequences of a tort is available only if such consequences are reasonably certain." *Curry v. Giant Food Co. of District of Columbia,* 522 A.2d 1283, 1291 (D.C.1987). Appellant argues that Mrs. Tuerr failed to make that showing. The particular failure of proof which appellant cites is that medical testimony was required to establish such future consequences, and Mrs. Tuerr's medical expert failed to provide such evidence within a reasonable degree of medical certainty.

■ Expert evidence may be required when recovery is sought for permanent injuries or where there are complicated medical questions related to causation of such injuries. *Jones v. Miller,* 290 A.2d 587, 590 (D.C.1972); *see also Baltimore v. B.F. Goodrich Co.,* 545 A.2d 1228, 1231 (D.C.1988). However, where the causal connection between an event and the injury is clear, expert testimony is not necessary. *Jones,* 290 A.2d at 590–91. The causal connection between the accident and the injury may be satisfied by the close proximity in time between the accident and the symptoms, because of the nature of the illness or because it is within common experience. *Id.* In this case, the testimony of the medical expert, appellee, and other witnesses combine to provide an adequate foundation for the economist's testimony on future losses and for the damage award entered.

Although Mrs. Tuerr had suffered a series of accidents prior to the elevator accident involved here, she indicated that the types of injuries were either unrelated to those she sustained in the elevator accident and/or the symptoms did not persist for any significant period of time.[4] Dr. Boris Vlalukin, Mrs. Tuerr's family physician, testified that he began treating her within one week of the accident. When Mrs. Tuerr's symptoms persisted, he referred her to Dr. Guy W. Gargour, a neurosurgeon, who also testified at the trial. Dr. Gargour subsequently diagnosed a ruptured disc at L–5, S–1 and later performed a lumbar laminectomy and diskectomy on Mrs. Tuerr on June 24, 1987. Her neurosurgeon testified that her back problems were the result of the elevator accident.

Dr. Vlalukin testified that the surgery, which was necessitated by the accident, could cause pain. Mrs. Tuerr testified that such pain persisted. She also had physical therapy and psychological treatment for

---

4. In 1977, Mrs. Tuerr sustained a whiplash injury; however, she testified that her condition returned to normal in about one month. In 1984, Mrs. Tuerr was in another car which was struck broadside as a result of which she lacerated her forehead and foot. She denied having any permanent residual injuries as a result. In February 1985, she fell and sprained her ankle.

In March 1987, she was in an automobile accident, but she denied suffering any significant injuries except for general stiffness and muscle spasms in her back for about two weeks. In August 1987, she was involved in a fourth accident in which her car flipped over and struck a tree. She sustained bruises on her head and thigh and a strained back as a result.

depression which followed. Mrs. Tuerr testified that she resigned from her job because she had constant pain in her back and upon medical advice. Her supervisor testified that she told him in November 1987 that the commute was also one reason she wanted to resign. She testified that she was unable to do her job as well as she had previously and that she had to rely on others to help. She also said that among the reasons she resigned was that she could not depend upon her leg and her schedule of therapy interfered with car pool arrangements.

Mrs. Tuerr testified that she had days of pain when she could barely move as a result of the injuries associated with the elevator accident. She testified that she tried working at a variety of jobs (*e.g.*, baby-sitting and sewing jobs), but she had difficulty on the days she was in pain. Mrs. Tuerr also looked without success for work she could physically perform closer to home to avoid the long commute. She testified that she needed assistance with her housework.

■ A jury may consider permanent losses or loss of future earnings when a plaintiff testifies to general impairment and interference with his or her activities caused by injuries. *Spar v. Obwoya*, 369 A.2d 173, 179 (D.C.1977). Appellant testified that she felt pain in her back and leg when the accident first occurred and that she did not have problems before the accident. She also testified to the persistence of the pain and the course of her treatment. Although she had accidents prior and subsequent to the accident involved in this case, she testified that all of her symptoms for the prior accidents abated within a short period of time. Surgery for the injury in this case improved her condition according to her testimony. She described in testimony the strenuous physical activities she was able to pursue before and her inability to continue those activities or the

physical demands of her job after the accident. She explained how her physical problems interfered with her daily routine, her resulting need for assistance with housework and her current inability to locate work which is within her physical capacity. Under the circumstances, we find this evidence adequate to support the testimony of the expert with respect to future losses. *See Spar*, 369 A.2d at 179.[5]

## V.

■ Finally, appellant argues that the trial court erred in failing to grant a new trial based on the excessiveness of the verdicts or, in the alternative, to reduce the verdict of Katherine Tuerr to the amount of the ad damnum. We find no error on either point. Our standard of review is abuse of discretion. *Phillips v. District of Columbia*, 458 A.2d 722, 724 (D.C.1983). A verdict is considered to be excessive when "it is so large that it is beyond all reason, or is so great as to shock the conscience.... [or] is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Id.* at 724 (internal quotation marks and citations omitted). We cannot agree that the trial court abused its discretion in concluding that the verdict was not excessive. *See id.*

■ The trial court may permit recovery in an amount in excess of that prayed for by a party who seeks relief. Super.Ct.Civ.R. 54(c). The rule provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in [his] pleadings." The trial court may in the exercise of its discretion grant a plaintiff leave to amend the ad damnum even after judgment. *Miller v. District of Columbia*, 479 A.2d 329, 331 (D.C.1984). While *Miller* is a case in which the court held that the trial

---

5. We also reject appellant's argument that it was error to allow the economist to testify as to what plaintiff's future lost earnings would have been if she had lost fifty percent of her earning capacity where the evidence showed that she suffered a thirty percent disability of the body as a whole. The economist explained to the jury a formula by which it could calculate for future lost wages in the event it should determine that plaintiff's earning capacity was greater or lesser than fifty percent. We find appellant's argument unpersuasive.

court has discretion to deny a post-verdict motion to increase the ad damnum, at least inferentially that discretion may be exercised to grant the motion as well. The motion may be denied properly when the court has doubts about the correctness of the jury's assessment of liability. *See Gleason v. L. Frank Co.,* 328 A.2d 96 (D.C.1974). It may also do so where the award appears to be based on passion, prejudice or other improper considerations. *Miller,* 479 A.2d at 331. We find no basis to conclude that the trial court abused its discretion in denying the request for a new trial based on excessiveness of verdict nor in its determination to allow an increase of the ad damnum, particularly given the amount of the special damages and the evidence of pain and suffering and permanency.

Accordingly, we affirm the judgment for appellees.